KANSAS CITY SOUTHERN RAILWAY COMPANY *v.*
SHANE, ADMINISTRATRIX.

5-685                                                       279 S. W. 2d 284

Opinion delivered May 23, 1955.

*Hardin, Barton, Hardin & Garner,* for appellant.

*Shaw, Jones & Shaw* and *Shaw & Spencer,* for appellee.

J. SEABORN HOLT, J.   Appellee, as Administratrix of the estate of her deceased husband, sued appellant for damages in the amount of $151,000, for his death which resulted when a one-half ton auto truck he was driving was struck by one of appellant's freight trains on a public crossing in Mena, Arkansas.  She alleged in her complaint that the negligent acts of appellant were: (1) Failure, while approaching the crossing, to keep a lookout, (2) Failure to ring the bell or blow the whistle as required by § 73-716, Ark. Stats. (1947), (3) Running the train at an excessive speed, (4) Failure to keep the crossing, which was hazardous, in a safe condition, and (5) Failure to provide signal warning devices, or a watchman at this "particular" crossing.   Appellant's answer was in effect a general denial, and in addition contained the affirmative plea of deceased's contributory negligence, as a complete bar to any recovery.

A jury trial resulted in a verdict for appellee in the amount of $9,000 and it is not claimed that this verdict is excessive.   From the judgment is this appeal.

For reversal appellant first argues that the court erred in giving, over its objections, appellee's Instruction No. 1 submitting the issue of failure of appellant's employees to keep a lookout as required under § 73-1002, Ark. Stats. (1947), and that the court erred in refusing to give appellant's requested Instruction No. 11 which was in effect peremptory.

After review of the record presented, we have reached the conclusion that this contention of appellant must be sustained. Appellee's Instruction No. 1 provides: "You are instructed that Section 73-1002 of the Revised Statutes of Arkansas for 1947 provides in part as follows:

" 'Duty of trainmen to keep lookout — Burden of proof of reasonable care.—It shall be the duty of all persons running trains in this state upon any railroad, to keep a constant lookout for persons and property upon the track of any and all railroads, and if any person or property shall be killed or injured by the neglect of any employee of any railroad to keep such lookout, the company owning or operating any such railroad, shall be liable and responsible to the person injured for all damages resulting from neglect to keep such lookout.'

"In this connection, therefore, you are instructed that under the law of this state, the persons running the train of the defendant, Kansas City Southern Railroad Company, were under a duty to keep a constant lookout for persons and property upon the track or approaching said track, and if the person or persons running said train failed to keep such lookout and such failure, if any, resulted in the death of the deceased, Charles D. Shane, then the defendant Kansas City Southern Railway Company would be liable to the plaintiff for all damages to the plaintiff resulting from such neglect, if any, to keep such lookout."

Appellant's requested Instruction No. 11 provides: "You are instructed that the plaintiff has failed to prove, by a preponderance of the evidence in the case, her allegation that the defendant failed to maintain and keep a

constant lookout at the railroad crossing at the junction of Reine Street and U. S. Highway 71, and as to that allegation of negligence, your finding must be for the defendants.''

The collision in question occurred about 6:45 p. m., November 28, 1953, on a dark, misty night. The deceased was driving a one-half ton truck east along Reine Street and was struck by appellant's northbound freight train on the Reine Street public crossing. Appellant's engineer who was operating the engine of the freight train testified in effect that he had been acting as an engineer for appellant for about thirteen years. The engine had four diesel units of the General Motors type, weighing about 900,000 pounds with a modern headlight of 32,000 candlepower which was ten feet, nine and one-half inches above the rails. You could distinguish an object (such as a man) about 800 feet and larger objects further than that depending on weather conditions. On the night in question he had a good headlight beam of about 600 feet from the end of the curve up to the crossing. His train consisted of fourteen loaded cars, four empties, and a caboose, and was going at a speed of about forty-five miles per hour, a speed he was required to make. As he approached the crossing in question he saw the headlights of the truck approaching the crossing when it was about 150 feet away going east. He immediately made an emergency application of the brakes. His brakes were working perfectly and responded promptly to his application. When the truck was about fifty feet from the crossing its driver, Mr. Shane, seemed to try to stop it but the pavement was wet and the truck skidded to the side upon the crossing almost sidewise. It required a distance of about 1,350 feet to stop the train and he stopped it as quickly as possible in the circumstances. He was passing through a cut about seven feet wide at its highest point and from his seat on the right side of the engine he was about thirteen feet above the rails. Two other employees, a brakeman and the fireman, were sitting on the seat beside him and their testimony tends to fully corroborate this engineer's tes-

timony. These three employees were the only eye-witnesses to the collision. A witness had testified that he thought the truck could have been seen by the appellant's operatives, when the train was approximately 258 feet away, for a distance of about 225 feet from the crossing. This difference between 150 and 225 feet as to the distance is not of material importance here in the circumstances because the physical facts show that this train could not have been stopped in time to have avoided the collision had the truck been discovered 225 feet away. In fact 1,350 feet was required in which to stop it.

As we read the evidence presented, the uncontradicted testimony shows that the operatives of appellant's train were keeping the lookout required by the lookout statute above, and, therefore, this issue should not have been submitted to the jury there being no evidence to support it.

In construing § 73-1002 above our rule appears to be well settled that where an injury is caused by the operation of a railway train a *prima facie* case of negligence is made against the company operating such train and the burden rests on the company to show that it was not guilty of negligence. The effect of the statutory presumption created by the lookout statute above has been construed many times by this court and its legal effect well settled by our decisions. In *St. Louis-San Francisco Railway Company* v. *Cole*, 181 Ark. 780, 27 S. W. 2d 992, this court said: "The Supreme Court of the United States recently said, in construing a statute similar to the Arkansas statute: 'The only legal effect of this inference is to cast upon the railway company the duty of producing some evidence to the contrary. When this is done, the inference is at an end, and the question of negligence is one for the jury upon all the evidence.' *Western & A. R. R. Co.* v. *Henderson*, 279 U. S. 639, 49 S. Ct. 445, 73 L. Ed. 884.

"After the introduction of evidence by the railroad company, as we have already said, the inference is at an end. It cannot be considered by the jury as evidence. . . .

"Under the construction placed upon statutes like ours, the presumption of negligence is at an end when the railroad company introduces evidence to contradict it, and the presumption cannot be considered with the other evidence, because to do this would, as stated by the Supreme Court of the United States, be unreasonable and arbitrary, and would violate the due process clause of the 14th Amendment. . . .

"The duty of the railroad to take precautions begins when it discovers, or should have discovered, the peril of the traveler. . . .

"The jury could not arbitrarily disregard the testimony of the engineer and fireman. *St. L. I. M. & S. R. Co.* v. *Landers,* 67 Ark. 514, 55 S. W. 940.

" 'The public interest requires that trains be run on time and that railroads dispatch their business promptly.' *Davis* v. *Porter,* 153 Ark. 375, 240 S. W. 1077."

The record reveals that appellee requested no instruction on the alleged negligence of appellant in failing to give the statutory signals (ringing the bell or blowing the whistle) required under § 73-716, Ark. Stats. (1947) and none was given. He also did not request any instruction on the issue of the alleged negligent speed of the train and none was given. The court did, however, give appellee's requested instructions on the issue as to the alleged hazardous condition of the crossing such as might require a "watchman, gongs, lights, or similar warning devices" and on the issue of the alleged negligence of appellant in failing to keep the right-of-way free of view obstructing objects. The jury, therefore, was not given an opportunity to pass on the issues as to warning signals and excessive speed.

We, therefore, reverse for the error above, and we remand the cause for a new trial. Our rule in reversing a law case is to remand the case for a new trial unless there be an affirmative showing that there can be no recovery. See *Fidelity Mutual Life Insurance Company* v. *Beck,* 84 Ark. 57, 104 S. W. 533, 1102.

In view of a new trial we think it only fair to point out that we find no abuse of the trial court's discretion in refusing to admit in evidence certain photographs offered by appellant which were taken some eleven months after the collision. Accordingly, the judgment is reversed and the cause remanded for a new trial.

Justice MILLWEE dissents.