EDENS *v.* STATE.

5025                                              357 S. W. 2d 641

Opinion delivered June 4, 1962.

*Gus Camp,* for appellant.

*Frank Holt,* Atty. General, by *Sam H. Boyce* and *Dennis W. Horton,* Asst. Attys. General, for appellee.

SAM ROBINSON, Associate Justice. The appellant, Edens, was charged with the crime of "overdrafting" by executing and delivering to Raymond Recker a check in the sum of $11,000.00 with the felonious intent to defraud the said Recker, Edens not having sufficient money in the bank to pay the check. He was convicted of the charge, sentenced to six years in the penitentiary, and has appealed. It is important to keep in mind that appellant was not charged with obtaining money by false pretense in violation of Ark. Stats. 41-1901.

Recker is a successful businessman and has dealt in transactions amounting to hundreds of thousands of dollars. He claims that he cannot read or write, but that he can sign his name. His signature shows extraordinarily good penmanship. It is hard to understand how a person could write such a good hand and not be able to read or write anything except his name.

Recker has had many business transactions with Edens. They have been having business dealings with each other over a period of several years. In 1958 Recker borrowed $3,000.00 from Edens and has not repaid it. On January 15, 1960, Recker gave Edens two checks totaling $11,000.00; one for $4,000.00 and the other for $7,000.00. The money was to be used by Edens to purchase a piece of land for Recker. When the $7,000.00 check was presented to the bank by Edens, payment was refused because Recker did not have sufficient funds in the bank to cover the check. It is significant that Recker was not charged with overdrafting. Later, the check was returned to the bank and honored. Edens failed to purchase the real estate.

On May 20, 1960, four months later, Recker called on Edens for payment of the $11,000.00 debt that Edens

owed him. Edens issued and delivered his check to Recker for the $11,000.00, but because of insufficient funds, the check was not honored by the bank. As a result of giving that check, on October 31, 1960, Edens was charged with overdrafting.

Subsequent to the giving of the first $11,000.00 check, Edens issued to Recker other $11,000.00 checks for the same purpose, but none of those checks were good. However, on June 24, 1960, Edens gave Recker a check in the sum of $4,500.00 as part payment on the debt, and that check was honored and paid.

On October 25, 1960, Edens' father gave Recker a check for $400.00 as payment of the interest on the debt owed by appellant. The check was not honored, but later the father paid the $400.00 in cash. Just six days after Edens' father paid the $400.00 interest on the debt, the felony information was filed charging Edens with overdrafting.

Ark. Stats. 67-720 makes it unlawful to give a bad check in payment of a debt with the intent to defraud. Ark. Stats, 67-722 provides that if the check is dishonored by the bank or drawee, such fact shall be prima facie evidence of the intent to defraud.

The effect of the statute providing that refusal of payment by the drawee of a check or draft is prima facie evidence of the intent to defraud is to cast upon the defendant the burden of going forward with the case. In the case at bar, the refusal of payment by the bank was prima facie evidence of the intent to defraud, but such evidence was not sufficient to take the case to the jury in the face of other evidence in the case. All of the evidence shows that Edens defrauded Recker of nothing by the issuance of the $11,000.00 check. There was no possibility of Edens defrauding Recker of anything by giving the check, and Edens could have had no intention of committing a fraud by giving the check. Prima facie evidence alone is not sufficient to support a verdict where it is contradicted by other evidence explaining the transaction.

In 20 Am. Jur. 1102, it is said: "While a presumption may relieve a party of the duty of presenting evidence, a prima facie case made in favor of the plaintiff, by a presumption of law, does not need to be overcome by a preponderance of the evidence, or evidence of greater weight, but needs only to be balanced to defeat the plaintiff's case and require him again to go forward with the proof. . . . After testimony is adduced tending to overcome a presumption, it ceases to have probative force."

Perhaps in some circumstances one could be guilty of perpetrating a fraud by giving a bad check in payment of a debt, but here the evidence shows conclusively that Recker was not defrauded by Edens giving him a check for $11,000.00. Recker did not part with one dime at the time of receiving the check or at any time thereafter as a result of having received the check. There is not a scintilla of evidence that Edens intended to defraud Recker by giving him the check. Edens had become indebted to Recker in the sum of $11,000.00 several months before the check was issued. There was no possibility that the check could cause Recker to lose anything except the time it might take to present the worthless check to the bank for payment. Certainly such a small inconvenience is not sufficient to base a six year sentence to the penitentiary.

Surely a verdict of guilty would not be sustained in every instance of a check being dishonored because of insufficient funds. In the case at bar, for instance, would a verdict of guilty be sustained against Recker because his $7,000.00 check, which he later made good, was dishonored because of insufficient funds when it was first presented to the bank, or would a conviction of appellant's father be sustained because the $400.00 check he gave Recker for interest was no good, and later the $400.00 was paid in cash? Of course a verdict of guilty would not be sustained in a case of that kind.

If there was substantial evidence of the intent to defraud other than the mere giving of a bad check, such

evidence could be sufficient to sustain a conviction, but here there is absolutely no evidence of the intent to defraud except the giving of the bad check and the presumption raised by such act is completely rebutted by the proven facts.

In *St. Louis-San Francisco Railway Co.* v. *Spencer*, 231 Ark. 221, 328 S. W. 2d 858, this Court said: "In the case of *Kansas City Southern Railway Co.* v. *Shane*, 225 Ark. 80, 279 S. W. 2d 284, 287, this statement was made: 'In construing § 73-1002 above our rule appears to be well settled where an injury is caused by the operation of a railway train a prima facie case of negligence is made against the company operating such train and the burden rests on the company to show that it was not guilty of negligence'. In that case it was stated that the statute in question creates a presumption or inference of negligence on the part of the railroad company. In the same case, however, the court approved what now appears to be the settled rule of this court to the effect that 'The only legal effect of this inference is to cast upon the railway company the duty of producing some evidence to the contrary. When that is done, the inference is at an end, and the question of negligence is one for the jury upon all the evidence.' "

In the *Spencer* case a judgment against the railroad company was reversed and the cause dismissed because there was no evidence of negligence except the statutory presumption. The Court held that the presumption was not sufficient to take the case to the jury in the face of other evidence showing there was no negligence. The same rule applies in the case at bar.

The judgment is reversed, and since the cause appears to have been fully developed, it is dismissed.

McFADDIN, J., dissents.

ED. F. McFADDIN, Associate Justice, (Dissenting). I agree that the judgment in this case should be reversed; but I dissent as to the dismissal of the case.

The judgment should be reversed because of Assignment No. 18 in the motion for new trial, which relates to statements made by the Prosecuting Attorney in the final argument to the jury; and some cases holding such statements to require reversal are: *Paul* v. *State*, 99 Ark. 558, 139 S. W. 287; *Thomas* v. *State*, 107 Ark. 469, 155 S. W. 1165.

However, I am firmly of the opinion that there was a case made for the jury, and the cause should be remanded for a new trial. Even if the Majority considers the evidence offered by the State to be weak (which I do not), nevertheless there was some evidence of guilt offered, and it may be strengthened on a new trial; so the case should be remanded according to such cases as: *Reed* v. *State*, 97 Ark. 156, 133 S. W. 604; *Johnson* v. *State*, 210 Ark. 881, 197 S. W. 2d 936; *Grigson* v. *State*, 221 Ark. 14, 251 S. W. 2d 1021; *Anderson* v. *State*, 226 Ark. 498, 290 S. W. 2d 846; and *Poole* v. *State*, 234 Ark. (adv. opn.) 593, 353 S. W. 2d 359. Each of these cases involved violation of the criminal laws, and is ruling here. With due deference to my associates on the Court, I must nevertheless state that the Majority Opinion seems to me to indicate that this Court is acting as an appellate jury in this case and bringing in a verdict of ''Not Guilty''; whereas I contend this Court should remand the case for a new trial, as was done in each of the five cases just cited above.

Now, I desire to go further and discuss (I) the statute under which the appellant was prosecuted; and (II) some of the evidence presented by the State.

I. *The Law Under Which Appellant Was Prosecuted.* Appellant was tried and convicted of violating the ''Arkansas Hot Check Law,'' which is Act No. 241 of 1959. Even though the law may have been changed, the appellant is tried under the law[1] applicable at the time of the offense, the date of which is stated to be

---

[1] The Act No. 241 of 1959 may now be found in §§ 67-719 *et seq.* Ark. Stats.

May 20, 1960. The germane portion of Section 2 of the Act 241 reads:

"It shall be unlawful for any person . . . to make payment of any pre-existing debt or other obligation of whatsoever form or nature, or for any other purpose, to make or draw or utter or deliver, with intent to defraud, any check, draft or order, for the payment of money, upon any bank, . . . knowing at the time of such making, drawing, uttering or delivering, that the maker, or drawer, has not sufficient funds in, or on deposit with, such bank . . . for the payment of such check . . . and all other checks . . . upon such funds then outstanding."

The germane portion of Section 4 of the Act No. 241 of 1959 reads:

"As against the maker, or drawer thereof, the making, drawing, uttering or delivering of a check, draft or order, payment of which is refused by the drawee, shall be prima facie evidence of intent to defraud . . ." Thus, the giving of a "hot" check to pay *a previous indebtedness* is an offense; and when the bank refuses payment on the check, such fact is *"prima facie evidence of intent to defraud."* That is what the statute says; and the Majority Opinion does not even intimate that such statute is unconstitutional.

II. *The Evidence Against Appellant.* With the law stated as above, I turn now to the evidence: Arnold Edens was an officer in a corporation called "United Enterprises, Inc." in Paragould, Arkansas; and Raymond Recker was an individual who lived in Walnut Ridge, in Lawrence County, Arkansas. Edens was the "moving spirit," or general manager of the United Enterprises, Inc.; and Edens and Recker had been acquainted for several years. In January 1960 Recker approached Edens to see if United Enterprises could purchase for Recker a particular 160 acres of land; and Edens required Recker to deposit with United Enterprises the sum of $11,000.00 as the proposed purchase

price of said lands which United would seek to purchase for Recker. A receipt of $11,000.00 was issued to Raymond C. Recker, which stated: "For deposit in full, 160 A Bovine Land, subject to approval of R. C. Recker." This receipt on the United Enterprises' form, was signed by Arnold Edens, dated January 15, 1960, and was introduced in evidence.

United Enterprises did not acquire the land for Recker and he demanded the return of his money; but the United Enterprises had used Recker's money for some other purpose not disclosed; and, finally, on May 20, 1960, Arnold Edens, appellant here, issued his *personal* check to Raymond Recker for $11,000.00, drawn on The Security Bank & Trust Company of Paragould, Arkansas. It was clearly established that Edens never had over $1,000.00 in his account in The Security Bank & Trust Company of Paragould at any time. When the bank refused to pay the $11,000.00 check, Edens attempted to give Recker other checks and to delay matters as long as possible.

Did Edens intend to defraud Recker? Edens and his company received $11,000.00 of Recker's money on January 15, 1960; then Edens toyed along with Recker for months by giving him a check on May 20, 1960 for $11,000.00 and by issuing other checks to further delay matters. Surely the evidence outlined above is sufficient to take the case to the jury and fair-minded men should have an opportunity to decide whether Edens was guilty of an attempt to defraud Recker. Regardless of all that the Majority Opinion said about overcoming presumptions—which I will subsequently mention—I still contend that a case was made for the jury under the proof here offered.

The Majority says, however, that this statutory provision in Section 4—about the failure of the bank to pay the check being *prima facie* evidence of intent to defraud—was entirely dissipated by other testimony. Whose testimony? It was the testimony of Edens. He was the witness who tried to explain away the entire

transaction and say that he was only doing Recker a favor to give him the check. The law is well established that the testimony of an interested person is never undisputed as a matter of law. *Stovall v. Stovall,* 228 Ark. 1077, 312 S. W. 2d 337; *Lewis v. Lewis,* 222 Ark. 743, 262 S. W. 2d 456; *Phelps v. Partee,* 208 Ark. 212, 185 S. W. 2d 705; and *Business Men v. Sanderson,* 144 Ark. 271, 222 S. W. 51. So Edens' testimony stands disputed by the law and the presumption of intent to defraud takes the case to the jury.

Section 4 of the Act No. 241 uses the words, *"prima facie* evidence." In 23 C. J. S. 534 "Criminal Law" § 900, the text reads:

" *'Prima facie evidence'* is evidence, direct or circumstantial, which indicates to a reasonable person such strong probability of guilt that accused's denial or explanation is called for, and which standing alone is sufficient to convict him of the offense with which he is charged; but such evidence is not necessarily conclusive and may be rebutted not only by contradictory evidence, but also by evidence so explaining the conditions and circumstances under which the alleged offense was committed *as to convince the jury that the person charged is not guilty."* (Emphasis supplied.)

The above quotation says that the *prima facie* evidence takes the case to the jury; and that is exactly what I believe. The Majority Opinion cites some railroad cases construing a statute on burden of proof. These cases are not in point. There are "disappearing presumptions", and there are "continuing presumptions";[2]

[2] On this matter of "Presumptions" here are some annotations in American Law Reports, for the benefit of any who desire to read them: "Constitutionality of statutes or ordinances making one fact presumptive or *prima facie* evidence of another," 51 A.L.R. 1139, 86 A.L.R. 179, and 162 A.L.R. 495; *"Res ipsa loquitur*—Burden of proof or evidence," 59 A.L.R. 486, and 92 A.L.R. 653; "Presumption as Evidence," 95 A.L.R. 878; "Presumption of innocence as evidence," 94 A.L.R. 1042, and 34 A.L.R. 938; "Presumption against suicide as evidence," 103 A.L.R. 185, and 114 A.L.R. 1226; "Directing verdict where based on testimony of party," 72 A.L.R. 27. See also McCormick on Evidence § 310 *et seq.*

and I maintain that in the case at bar the Legislature has made the dishonoring of a check *prima facie* evidence, sufficient to take the case to the jury. But, even if it should be a "disappearing presumption," still it would require uncontradicted evidence to dissipate the presumption; and the evidence offered by Edens was his own testimony, which certainly is contradicted as a matter of law.

In short, I see no escape from the conclusion that this case should be reversed and remanded for a new trial. Certainly it should not be dismissed.