STATE OF ARKANSAS *v.* WILLIE GENE JACKS

5285                                            418 S. W. 2d 622

Opinion delivered September 25, 1967

*Joe Purcell,* Attorney General; *Don Langston,* Asst. Atty. Gen., for appellant.

*John Harris Jones,* for appellee.

LYLE BROWN, Justice. The State, through the attorney general, prosecutes this appeal under the authority of Ark. Stat. Ann. § 43-2720 (Repl. 1964), contending the ruling of the trial court should be corrected to preserve uniformity in the administration of the criminal law. Willie Gene Jacks, defendant below, successfully moved to quash an information charging him with failure to discharge mechanics' and materialmen's liens in violation of Ark. Stat. Ann. § 51-640 (Supp. 1965).

Jacks' motion to the trial court raises two points. First, he contends § 51-640 is unconstitutional in that it attempts to establish a prima facie case of intent to defraud when a contractor fails to discharge a lien within ten days after receipt of payment. Second, after he is alleged to have received the money, Jacks was adjudged a bankrupt by the United States District Court; that

adjudication, so Jacks contends, placed his person and property within the exclusive jurisdiction of the bankruptcy court. The two contentions must be separately considered.

Prior to 1963, the penalty statute for failing to satisfy the involved liens was controlled by Ark. Stat. Ann. § 51-601 (1947). That section was declared unconstitutional in *Peairs* v. *State,* 227 Ark. 230, 297 S. W. 2d 775 (1957). The absence of the requirement that intent to defraud be established in a prosecution was the basis for the holding in *Peairs.* Apparently for the purpose of filling the void, the Legislature enacted a new penalty statute in 1963, Ask. Stat. Ann. § 51-640 (Supp. 1965). This is the law under which Jacks was charged. It contains the element of "intent to defraud" and in addition contains this sentence:

"In any prosecution under this act [§§ 51-640, 51-641] as against the person so receiving payment when it shall be shown in evidence that any lien for labor or materials existed in favor of any mechanic, laborer or materialmen and that such lien has been filed within the time provided by law in the office of the circuit clerk or other officer provided by law for the filing of such liens, and that such contractor, subcontractor or other person charged has received payment without discharging the said lien to the extent of the funds received by him, the fact of acceptance of such payment without having discharged the same lien within ten [10] days after receipt of such payment or the receipt of notice of the existence of such lien, whichever event shall occur last, shall be prima facie evidence of intent to defraud on the part of the person so receiving payment."

Appellee asserts that the statutory presumption of intent to defraud is unconstitutional. He cites *Bailey* v. *Alabama,* 219 U. S. 219 (1910) and *Pollock* v. *Williams,* 322 U. S. 4 (1944). The statute in *Bailey* was struck

down on other grounds. First, it was found to be in violation of the federal anti-peonage statutes. Secondly, Alabama had a rule of evidence that would prohibit Bailey from testifying as to uncommunicated intentions. Combining that rule with the "prima facie evidence rule," it is readily seen that Bailey's defense was literally "blocked in." Finally, it was found to be the fundamental purpose of the Alabama statute "to compel, under the sanction of the criminal law, the enforcement of the contract for personal service. . ." *Pollock* involved a statute classified by the court as a peonage statute and in the context of the type of legislation the presumption section was held unconstitutional. The court said the presumption in *Pollock* "in a different context might not be invalid. Indeed, we have sustained the power of the state to enact an almost identical presumption of fraud, but in transactions that did not involve involuntary labor to discharge a debt. *James-Dickinson Farm Mortgage Co.* v. *Harry,* 273 U. S. 119." (1927)

The general rule, well established in many jurisdictions, including the United States Supreme Court, is well stated in *O'Neill* v. *United States,* 19 F. 2d 322 (1927):

"The general principle is well recognized that even in criminal prosecutions, Congress or a state Legislature may with certain limitations enact that when certain facts have been proved they shall be prima facie evidence of the existence of the main fact in question. . . The limitations are these: There must be some rational connection between the fact proved and the ultimate fact presumed; the inference of the existence of the ultimate fact from proof of the other fact must not be so unreasonable or unnatural as to be a purely arbitrary mandate; and the accused must not be deprived of a proper opportunity to present his defense to the main fact so presumed and have the case submitted upon all the evidence to the jury for its decision."

The case at bar clearly cannot be classified as a peonage statute. It is more comparable to our law making it an offense to execute an overdraft which likewise contains the presumption clause. Ark. Stat. Ann. §§ 67-720—24 (Repl. 1966). This court said in *Edens* v. *State,* 235 Ark. 284, 357 S. W. 2d 641 (1962) that the only effect of the presumption clause in § 67-722 is to place the burden on the defendant to go forward with the case. The burden of proof is not shifted.

Further protection is afforded Jacks by the holding in *Reno and Stark* v. *State,* 241 Ark. 127, 406 S. W. 2d 372 (1966), where we held that it is improper for the trial court to advise the jury of the presumption provision. *Reno and Stark* involved the charge of failure to discharge materialmen's liens.

We hold that the presumption clause has a rational connection with the balance of our statutes governing mechanics' and materialmen's liens. It is not arbitrary. The accused is not deprived of opportunity to present his defense on the main fact. The presumption of innocence remains with the accused and the burden of proof on the whole case is in the State. The accused is merely required to go forward with his proof when the lien is established, payment is proven, and the failure to satisfy the lien is shown.

We can quickly dispose of the argument that if one violates a state law of this nature and before prosecution is adjudged a bankrupt, he gains immunity from the violation. That is the substance of the second point raised by Jacks. If a contractor receives payment which under valid legislation is required to be used to discharge lawful liens, but instead, misappropriates the payment *with criminal intent,* he is subject to prosecution. The federal bankruptcy law is a civil proceeding enacted for the relief of persons financially distressed and certainly does not purport to pre-empt our state penal statutes.

Reversed and remanded.

Byrd, J., dissents.

Conley Byrd, Justice, dissenting. It is my position
that the prima facie presumption of intent to defraud
in Ark. Stat. Ann. § 51-640 (Supp. 1965) is invalid;
and that, because of the manner in which the statute is
drawn, the invalid sentence containing the prima facie
presumption cannot be picked from between the viola-
tion sentence and the penalty sentence without destroy-
ing the whole section, which was enacted as one para-
graph. Section 51-640 provides:

"It shall be unlawful for any contractor . . . who
has performed work . . . for the improvement of
any property where such work or materials may
give rise to . . . materialman's liens . . . *knowingly
to receive payment* of the contract price . . . *without
applying the money so received to the discharge of
any such liens known* to the person receiving such
payment . . . with the intent thereby to deprive the
. . . person so paying the said contractor . . . of his
funds without discharging the said liens and thereby
to defraud the said owner or person so paying. In
any prosecution . . . as against the person so receiv-
ing payment when it shall be shown . . . that any
lien for materials existed in favor of any . . . ma-
terialmen and that such lien has been filed within
the time provided by law . . . and that such contrac-
tor has received payment without discharging the
said lien to the extent of the funds received by him,
the fact of acceptance of such payment without hav-
ing discharged the same lien within ten (10) days
after receipt of such payment or the receipt of notice
of the existence of such lien . . . shall be *prima facie*
evidence of intent to defraud on the part of the per-
son so receiving payment. If the amount . . . shall
exceed . . . ($25.00) the party so receiving shall be

deemed guilty of a felony. . . If the amount so received does not exceed . . . ($25.00) the party shall be deemed guilty of a misdemeanor. . ." (Emphasis supplied.)

The above section must be construed together with Ark. Stat. Ann. §§ 51-601 (1947) and 51-613 (Supp. 1965). The first section (51-601) gives a lien to any mechanic or materialman furnishing labor or materials for any improvement upon land, and by its very terms extends to suppliers of materials furnished by subcontractors. The second section (51-613) gives the materialman 120 days from the date the material is furnished in which to file a lien. We have construed this 120 days to apply from the date the last item in a running account was furnished. *Kizer Lbr. Co.* v. *Mosley,* 56 Ark. 516, 20 S. W. 409 (1892) and *Streuli* v. *Wallin-Dickey & Rich Lbr. Co.,* 227 Ark. 885, 302 S. W. 2d 522 (1957).

The statute under which appellee was here charged makes it an offense not to receive money but to fail to discharge known liens after he has received the money under his building contract, with intent ti defraud the owner. This same statute provides (and as interpreted by the majority) that when the prosecution has shown the contractor's receipt of the payment and his failure to discharge the materialman's lien within ten days after receipt of notice of its existence, a prima facie presumption arises that the contractor intended to defraud the owner so making the payment. If the presumption arose only as to the liens of which the contractor had knowledge at the time he received the funds, I would agree with the majority that there was a rational connection with the balance of the statutes governing mechanics' and materialmen's liens. But the prima facie presumption is not so limited—it permits a conviction upon the contractor's failure to discharge a lien within ten days after he has notice of its existence. In this situation it permits a conviction where proof of guilt is lacking. *Pollock* v. *Williams,* 322 U. S. 4, 15 (1955).

That the presumption here created permits a conviction without proof can be more clearly seen by a look at the manner in which buildings are constructed. This is the age of specialization and home building contractors, like others, have had to take advantage of such specialization. Today's home building contractor seldom does any direct physical labor in house construction. Usually he subcontracts the cement work (the foundation and sometimes the floor if the house is placed on a slab); the framing; the roofing; the plumbing; the electrical work; the heating and air conditioning; the sheet rock; the painting; the flooring; and the landscaping. Since Arkansas laws furnish no provision for advance notice by laborers and materialmen claiming liens, the contractor, in paying subcontractors, has to rely almost entirely on the integrity of the many small businessmen with whom he deals. Obviously a contractor does not expect to make a living from only one building; therefore, he builds a number of homes during a year. Because the materialman's lien exists in secret for 120 days, the contractor must to some extent rely on the subcontractors' assertions that their bills have been paid. There is no practical way for the contractor to know about the existence of such a lien until it is filed. Often he finds that he has paid the same subcontractor for work on subsequent building jobs before discovering that the subcontractor has neglected to pay his suppliers on a prior job. Thus it is seen that under the interpretation given to the prima facie presumption sentence in the statute, it is entirely possible to send a building contractor to jail, not upon proof that he defrauded the owner for whom he constructed a building, but because he was unable to pay his debts. This to me constitutes an imprisonment for debt contrary to our constitution, *Peairs* v. *State,* 227 Ark. 230, 297 S. W. 2d 775 (1957). I fail to see the rational connection in this case between the presumption and the balance of the statutes governing mechanics' liens, which exists in the "hot check" statute, where the offense is complete upon the giving of the check. Here the offense is not complete until the

contractor has failed to pay the lien within ten days after receipt of notice of the lien, even though he did not know of its existence until 100 days after receipt of the money.

Furthermore, because of the 120 days given to materialmen to file liens, an owner can harass a building contractor by prosecution under the statute for his failure to discharge such a lien before taking bankruptcy; and can stand aloof from a suit for malicious prosecution by asserting that all he knew was that he had paid the contractor and the latter had not discharged the lien within the ten days allowed by the statute.

Nor can I agree with the majority opinion that the federal bankruptcy act does not purport to pre-empt our state penal statutes. If the sentence containing the prima facie presumption is continued in the statute as being valid, then it would appear that a contractor, irrespective of his conduct, would not be violating the statute if he could within ten days after knowledge of a lien get enough money to pay the materialman's lien. In this situation the threat of prosecution would exist if he took bankruptcy at any time before the time for filing materialmen's liens expired, because the effect of bankruptcy is to give the bankruptcy court complete control of all the bankrupt's assets—thereby making it impossible for him to comply with the terms of the penal statute. Thus the statute in effect threatens the contractor with prosecution if he takes bankruptcy at any time after receiving the money and before any liens are discharged, irrespective of his knowledge of such liens. Certainly a state statute making it a criminal offense to exercise a right given by a federal statute as directed by the United States Constitution is invalid.

Therefore, I would affirm the trial court.