TEXAS SKAGGS, INC., Appellant,

v.

Sharon GRAVES, Appellee.

No. 8653.

Court of Civil Appeals of Texas, Texarkana.

April 17, 1979.

Charles D. Barnette, Arnold, Arnold, Lavender & Rochelle, Ltd., Texarkana, Ark., for appellant.

Jim L. Hooper, Harkness, Friedman, Kusin & Hooper, Texarkana, for appellee.

RAY, Justice.

This is a malicious prosecution suit. Appellee (plaintiff), Sharon Graves (Graves), filed suit against Texas Skaggs, Inc. (Skaggs), appellant (defendant), alleging that Skaggs had willfully and maliciously commenced an action against her in the Municipal Court of Texarkana, Arkansas. The jury returned a verdict of $20,000.00 actual damages. The trial court overruled appellant's motion for judgment notwithstanding the verdict and the motion for new trial, and entered judgment for Appellee Graves. Skaggs has perfected its appeal and submits eight points of error for our consideration. The judgment of the trial court will be affirmed.

The facts are that Sharon Graves worked as a checker in the Skaggs store in Texarkana, Arkansas, but was "fired" for reasons not material to this case. Nevertheless, she continued to purchase her groceries at the Skaggs store and often paid for them by check. Appellee Graves shared her checking account with her husband. Although the account was in her name, it was her custom to leave one or two blank checks, signed by her, with her husband so he could draw on the account. When the couple separated, the husband withdrew all of the funds from the account so that on January 2nd and January 5th, 1977, the two checks written by Sharon Graves to pay for groceries at Skaggs were returned to Skaggs marked "Insufficient Funds." The two checks for $13.17 and $21.53 represented the total amount of $34.70 that was due Skaggs. The "returned check ledger" kept by Skaggs indicated that Graves was first contacted on January 17, 1977, concerning the insufficient funds checks. Graves was not employed on that date because she had recently been terminated by Skaggs. A ledger entry for January 27, 1977, shows that appellee was again contacted and agreed to pay as soon as she could get her money from the Skaggs credit union. The ledger entry was as follows: "1/27 Waiting on credit union money." This entry is consistent with Graves' testimony that she had promised Skaggs she would pick up the checks as soon as she received the money and that Skaggs had agreed to wait.

On February 8th and 11th, in keeping with store policy, Skaggs sent certified letters to Mrs. Graves concerning the two checks. Graves testified that she never received either certified letter because during her period of unemployment she had to stay with her mother who helped her care for her three children and consequently was not at her own home to receive the mail. On February 17th, Graves received her money from the Skaggs credit union and on the same day purchased a money order and mailed it to Skaggs to cover the "hot" checks. She did not return to the store and claim the two checks because she was embarrassed by the situation. Skaggs admits that it received the payment for the checks.

On February 18, 1977, Bill Pennington, a manager for Skaggs, filed an "Incident Report" with the Texarkana, Arkansas Police Department reporting Sharon Graves for a violation of the Arkansas Hot Check Law. On February 22nd, Pennington filed an "Affidavit for Warrant of Arrest" for Sharon Graves (comparable to a complaint in Texas) and a warrant of arrest was issued the same day. There is no evidence indicating that Graves knew or had any reason to know that the warrant had been issued until the day she was arrested.

Sharon Graves visited the Skaggs store on March 3, 1977, to do some shopping with a friend. While she was in the store, Charles Hubbard, a manager for Skaggs, summoned the police, who came and arrested Graves. She tried to explain to Sgt. Larry Arnold, the arresting officer, that the checks had been paid, but Arnold, operating on the warrant, took her out of the store and to the police station where she was booked on a hot check charge. Arnold then telephoned Skaggs and learned that the checks had, in fact, been paid. Arnold then released Graves and returned the two checks to her (that had been attached to the Affidavit for Warrant of Arrest).

Sgt. Arnold talked to an employee of Skaggs again that afternoon and when the person he was talking to learned that Graves had been released, that person (unidentified) told Arnold that he wanted Graves prosecuted and that he did not care if she had paid the checks. The next morning, March 4th, Arnold drove to Sharon Graves' home in Texas and told her that Skaggs intended to prosecute her that afternoon. Mrs. Graves immediately hired an attorney and appeared in Court. The municipal judge dismissed the case when the prosecution could not produce the "hot" checks.

The trial court took judicial notice of the Arkansas Hot Check Law and presumably applied the Arkansas law as it relates to malicious prosecution. We have chosen to review this case in the light of the Arkansas law since the parties have presented their case on appeal on the basis that Arkansas law applies.

Appellant challenges the submission of the case to the jury by asserting that the trial court erred in not granting Skaggs motion for a directed verdict, motion for judgment notwithstanding the verdict, and motion for new trial. Skaggs also asserts that Graves has failed to plead all of the elements of a cause of action for malicious prosecution.

■ In Arkansas, a cause of action for malicious prosecution consists of the following elements:

(1) A criminal prosecution instituted or continued by the defendant against the plaintiff;
(2) Termination of the proceeding in favor of the accused;
(3) Absence of probable cause for the proceeding;
(4) Malice; and,
(5) Damages.

See Notes, *Malicious Prosecution—The Law In Arkansas*, 22 Ark.L.Rev. 340 (1968).

In response to special issues, the jury found that Graves did not know that her bank account had insufficient funds for the payment of the two checks; that Skaggs did not have probable cause to institute the prosecution of Sharon Graves; that Skaggs acted with malice; and, that the sum of $20,000.00 would reasonably compensate Graves for her actual damages.

## INSTITUTION OF CRIMINAL PROCEEDINGS

The evidence is clear and undisputed that Skaggs initiated and continued the prosecution of Sharon Graves.

## TERMINATION OF THE PROCEEDINGS IN FAVOR OF THE ACCUSED

■ The record reflects that the case against Graves was dismissed in the Municipal Court of Texarkana, Arkansas, with the notation, "dismissed on basis checks not available for presentation of case." Skaggs argues that this type of termination is indecisive and is not sufficient to establish malicious prosecution. Prosser describes types of termination that are sufficient to sustain a malicious prosecution suit:

"On the other hand, it will be enough that the proceeding is terminated in such a manner that it cannot be revived, and the prosecutor, if he proceeds further, will be put to a new one. This is true, for example, of an acquittal in court, . . . the entry of a nolle prosequi or a dismissal, abandonment of the prosecution by the prosecuting attorney or the complain-

ing witness, . . . where any of these things have the effect of ending the particular proceeding and requiring new process or other official action to commence a new prosecution. It may be said generally, that this is true whenever the charges or the proceeding are withdrawn on the initiative of the prosecution. . .

"On the other hand, where charges are withdrawn or the prosecution is terminated at the instigation of the accused himself, or by reason of a compromise into which he has entered voluntarily, there is no sufficient termination in favor of the accused. . . . " W. Prosser, Torts Sec. 113, pp. 857, 858 (3rd ed. 1964). Prosser is in accord with the rule established by the Restatement (Second) of Torts, Secs. 658, 659 (1977). The abandonment of the proceedings because a conviction has, in the natural course of events, become impossible or improbable, is a sufficient termination in favor of the accused. See Restatement (Second) of Torts, Sec. 660(b) and the Comment on Clause (b) (1977). We are of the opinion that this case was not dismissed on technical or procedural grounds, but was an abandonment of the prosecution by the prosecuting attorney and that the inferences to be drawn from the evidence support that conclusion. We are of the further opinion that because there was a dismissal for lack of incriminating evidence, Graves could have procured a finding of "not guilty" by the municipal court had the matter been pressed for a full trial by the prosecuting attorney. Closely connected with the element of successful termination is the defense that Graves was in fact guilty of the charge. This defense was available even if Graves had been acquitted of the criminal charge. The rational basis is that the law protects only the innocent and, if guilty, the plaintiff deserved the treatment complained of. Thus, Skaggs had the option to assert the defense that Graves was in fact guilty of the charge. There was apparently some attempt to prove this defense, but the jury rejected it.

## ABSENCE OF PROBABLE CAUSE

■ Graves had the burden of proving that the criminal proceeding was initiated or continued by Skaggs without probable cause; that is, Graves had to show that Skaggs had no honest or reasonable belief in the truth of the charge however suspicious the circumstances of Graves' acts. Probable cause has been defined by the Arkansas Supreme Court in *Hitson v. Simms*, 69 Ark. 439, 441, 64 S.W. 219, 220 (1901), as follows:

" . . . such a state of facts known to the prosecutor, or such information received by him from sources entitled to credit, as would induce a man of ordinary caution and prudence to believe, and did induce the prosecutor to believe, that the accused is guilty of the crime alleged, and thereby caused the prosecution. . . "

However, it is stated in 22 Ark.L.Rev. 349:

"Liability is imposed on the defendant where there are sufficient facts to indicate to a reasonable man that the plaintiff was guilty but the defendant himself knew better, i. e., a subjective test. Since the test requires more than mere unfounded suspicion the courts will hold a defendant liable in cases where a reasonable man would further investigate the facts."

■ The facts supporting the jury's finding of lack of probable cause are that Graves was well-known by the employees of Skaggs; that the two checks were relatively small; that the checks were used to pay for groceries alone and that no cash was obtained with the checks; that Graves could have obtained large amounts of cash because she knew all of the Skaggs' employees; that she could have cashed many checks obtaining cash, but did not; that the checks were written on her regular bank account and not some fictitious bank or bank account; that once she was notified that her two checks had been returned to Skaggs, she immediately agreed to make restitution; that Graves in fact mailed her money order to Skaggs prior to the time

that prosecution was instituted; that Skaggs was aware of the restitution before her arrest; that Skaggs had agreed to await restitution and to accept payment for the checks when Graves received her money from the Skaggs credit union; that Skaggs, pursuant to its agreement with Graves, had accepted restitution but issued instructions that the prosecution continue; and, that Skaggs further insisted that the prosecution continue after having been apprised of the fact that Mrs. Graves had been arrested and released by the officer after the officer had called one of Skaggs' employees and learned that restitution had been made. From the foregoing facts, and the inferences to be drawn therefrom, the jury could have reasonably concluded that Graves did not intend to defraud Skaggs and that no probable cause existed to institute or continue the prosecution proceedings. As a defense, the burden of persuasion was on Skaggs to show that the complaining witness, Bill Pennington, believed in Graves' guilt at the time the original proceeding commenced and that this belief was supported with facts which would lead a reasonable, cautious or prudent man to the same conclusion, and which in fact did lead Pennington to this conclusion. Pennington was not called as a witness. The jury apparently believed that the testimony of Sharon Graves was more plausible than that of the employees at Skaggs and that Skaggs knew or should have known or found out from further investigation that Graves did not issue the checks knowing at the time of issuing them that she did not have sufficient funds in her bank account to cover the checks. The jury could have further believed that while a reasonable person might have concluded that Graves was guilty, Skaggs' employees knew better and should have further investigated the facts.

▮ The "Arkansas Hot Check Law", Ark.Stat.Ann. Sec. 67–720 (Supp.1978) provides:

"It shall be unlawful for any person to procure any article or thing of value, . . . or for any other purpose to make or draw or utter or deliver, with intent to defraud, any check, . . . upon any bank, . . . knowing at the time of such making, . . . that the maker, . . . has not sufficient funds in, or on deposit with, such bank, . . . .".

Evidence of the requisite intent to defraud is supplied by Ark.Stat.Ann. Sec. 67–722 which provides that the making of a check, " . . . payment of which is refused by the drawee, shall be prima facie evidence of intent to defraud . . . ". While the statute raises the presumption of intent to defraud, such presumption may be rebutted by evidence explaining the transaction and where the evidence is sufficient to dispel any presumption of intent to defraud, the statute alone will not support a conviction under the Arkansas Hot Check Law. *Edens v. State*, 235 Ark. 284, 357 S.W.2d 641 (1962). The Texas law is similar. See *Brown v. Parrata Sales, Inc.*, 521 S.W.2d 359 (Tex.Civ.App. Dallas 1975, no writ). In the present case, there was no intent to defraud because there was ample evidence to support the jury finding that Graves did not know that she had insufficient funds in her bank account at the time of writing the checks with which to make payment of the two checks when they were processed for payment at her bank. And while restitution alone is not an absolute defense to the Arkansas Hot Check Law as stated in *Garroute v. State*, 241 Ark. 285, 408 S.W.2d 485 (1966), the fact that Graves immediately agreed to make restitution and did in fact make restitution is some evidence that she did not intend to defraud Skaggs. Certainly, once Graves had made restitution and that fact was coupled with all the other facts known to Skaggs' employees, a conclusion that Skaggs had no probable cause to further insist upon the prosecution of Graves would be justified.

## MALICE

▮ Regarding the element of malice, it is generally agreed that the lack of probable cause may give rise to an inference of malice, sufficient to carry the question to the jury. W. Prosser, Torts, Sec. 113, p. 868 (3rd ed. 1964). The courts require that

malice in fact be shown in order to sustain a recovery for malicious prosecution. This is usually established by proving that the defendant had a wrongful or improper motive or was motivated by some purpose other than bringing a guilty person to justice, such as, using the prosecution as a means to recover property, to extort money, or to collect a debt. " . . . Hence, proof of malice need not be direct but may be inferred from circumstances surrounding the defendant's act. This does not mean the defendant must have acted out of hatred, ill will, spite or grudge." 22 Ark.L.Rev. 340, 353, supra. The jury could and probably did believe that Skaggs instituted the criminal proceedings without probable cause in an effort to collect the two checks. The jury finding that Skaggs acted with malice has ample support in the record. Certainly, Skaggs' insistence that the prosecution continue against Graves after she had been released by Sgt. Arnold following her arrest with the statement to the effect that Skaggs did not care if Graves had paid the checks, Skaggs wanted her prosecuted anyway, supports the inference that Skaggs continued to act maliciously.

## DAMAGES

■ Appellant argues that the jury verdict was so grossly excessive as to show that it was the result of passion, prejudice or other improper motives. No cases are cited to guide this Court in its determination of this issue. The general rule is as follows:

"Although the verdict is large and the trial court, in the exercise of a sound discretion, might properly have set it aside, the appellate court will not disturb the verdict, although it may seem too large, in the absence of circumstances tending to show that it was the result of passion, prejudice, or other improper motive, or that the amount fixed was not the result of a deliberate and conscientious conviction in the minds of the jury and the court, or so excessive as to shock a sense of justice in the minds of the appellate court." 17 Tex.Jur.2d Damages, Sec. 341, p. 415 (1960).

As stated in *Green v. Meadows*, 527 S.W.2d 496 (Tex.Civ.App. Houston-1st Dist. 1975, writ ref'd n. r. e.), there are no objective guidelines by which we can measure the money equivalent of mental pain.

" . . . Much discretion must be allowed the jury in fixing this amount. The trial judge refused to order a remittitur. We are unable to say that the jury's verdict is excessive to the extent that the judgment should be reversed for that reason only. . . . "

In *Green*, the jury had awarded the plaintiff $20,000.00 in a malicious prosecution suit.

The facts in the present case show that Sharon Graves has suffered substantial injury. She was arrested and paraded through the store by a uniformed policeman and the store manager in front of her friends and former fellow employees. She was taken to the police station where she was booked and suffered the humiliation of a criminal charge. She testified that because of this criminal record she was not hired by several prospective employers because of her arrest record which will follow her the rest of her life. The evidence supports the jury verdict.

The trial court allowed Sharon Graves to testify concerning statements made to her by prospective employers to the effect that they would not hire her because of her arrest. Appellant's attorney objected to this testimony on the grounds it was hearsay. The trial court overruled the objections and appellant now asserts that the trial court's ruling was error.

■ Hearsay is an out of court statement offered at trial to prove the truth of the matter asserted. 5 Wigmore on Evidence, Sec. 1361 (3rd ed. 1940). Where the out of court statement is not offered to prove any facts stated therein, it is not hearsay. The statements made to Graves by prospective employers were offered as evidence to prove the reasons why Mrs. Graves had not gained employment. As such, the statements were hearsay. However, Graves had testified, without objection, that she had applied for jobs and been

turned down because of the incident with Skaggs. She further testified that she had filled out applications for employment that asked about her arrest record and that she had indicated on the applications that she had been arrested. Since Mrs. Graves had testified of her own knowledge that she had been refused jobs because of the incident with Skaggs, we do not think the hearsay statements of prospective employers had the effect of causing the jury to render an improper verdict. While we have concluded that the trial court erred in admitting such evidence, we are of the opinion that such error was harmless.

To recapitulate, the pleadings were adequate to support the judgment; there was sufficient evidence to establish that Skaggs had instituted and continued criminal prosecution against Sharon Graves; there was evidence that the proceeding was terminated in favor of Graves; that the evidence established an absence of probable cause for institution of the criminal proceedings against Graves; that the evidence supports the finding of malice; and, the evidence supports the jury finding of $20,000.00 in damages.

All of appellant's points of error have been considered and are overruled. The judgment of the trial court is affirmed.

HUTCHINSON, J., not participating.