## STATE *vs.* JOHN BESWICK.

Pub. Laws R. I. cap. 797, § 4, of March 18, 1880, provide:

"It shall not be necessary to prove an actual sale or the liquors enumerated in sections 18 and 19 of said chapter 508, in any building, shop, saloon, place, or tenement, in order to establish the fact that any of said liquors are there kept for sale; but the notorious character of any such premises, or the notoriously bad or intemperate character of persons frequenting the same, or the keeping of the implements or appurtenances usually appertaining to grog-shops, tippling-shops, or places where such liquors are sold, shall be *primâ facie* evidence that said liquors are kept on such premises, for the purposes of sale within this State."

*Held,* that this act, by making the recited circumstances *primâ facie* evidence against an accused, is unconstitutional and void, in depriving the accused of the protection of the common law principle that every person is to be presumed innocent until he is proved guilty, as recognized in the Constitution of Rhode Island, art 1, § 14, and in violating the provision that an accused shall not "be deprived of life, liberty, or property, unless by the judgment of his peers or the law of the land." Constitution of R. I. art. 1, § 10.

What is meant by the words the "law of the land."

A statute repealed § 19 of a former act, and reënacted it in an amended form as § 19 of said act.

*Held,* that as to subsequent offences § 19 of said act was § 19 as amended.

A statute providing "that no negative allegations of any kind need be averred or proved in any complaint," under a law forbidding the sale of liquors, does not violate any constitutional right of the accused.

There is no presumption of law that a liquor described simply as "beer" is a malt liquor.

EXCEPTIONS to the Court of Common Pleas. The facts involved are stated in the opinion of the court.

Public Laws R. I. cap. 797, of March 18, 1880, contain the following provisions:

"*It is enacted by the General Assembly as follows :*

"SECT. 1. The following forms may be used in prosecutions

under sections 18 and 19 of chapter 508, of the Public Laws, and if substantially followed shall be sufficient in law to fully and plainly, substantially and formally, describe the offences set forth in said sections respectively, and to authorize the lawful doings of the officers acting under and by virtue of the warrants and other process issued in substantial conformity therewith; but this shall not be so construed as to prohibit the use of other suitable forms.

.   .   .   .   .   .   .   .   .   .   .

" *Form for a complaint and warrant for keeping intoxicating liquors for sale under section* 19.

" To          , Esquire, trial justice (or clerk, as the case may be) of the Justice Court, or to          , a justice of the peace authorized to issue warrants, of the town of          , in the county of          , in the State of Rhode Island and Providence Plantations,          , chief of police (or special constable, or other person, as the case may be) of the town of          , in said county, on oath complains in the name and behalf of the State, that at said          , on the          day of          A. D. 18—, with force and arms          , of said          , without lawful authority did then and there keep and suffer to be kept on his premises, in his possession, and under his charge, ale, wine, rum, and other strong and malt liquors, and mixed liquors a part of which was ale, wine, rum, and other strong and malt liquors, with intent to sell the same in this State.

" Wherefore he prays advice, and that process may issue, and that the said respondent may be apprehended and held to answer to this complaint, and be further dealt with relative to the same according to law.

" Dated at          , this          day of          A. D. 18—.

[Here insert certificate of oath of complainant, and recognizance when required by law.]

" STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS.

                    sc. — *To the sheriff of the County of          , his deputies, or to either of the town sergeants or constables in the County of                              Greeting :*

" Complaint having been made to me on oath, as above written, you are therefore hereby required in the name of said State

forthwith to apprehend the body of the said respond-
ent above named (if he may be found within your pre-  [L. S.]
cinct), and him have before the Justice Court of the town
of      , or some other lawful authority, to be dealt with relating
to the premises, as to law and justice shall appertain.   And for so
doing this shall be your warrant.   Hereof fail not.
*Given under my hand and seal, at      . , in said county, the
    day of      , in the year* 18—.

*Trial Justice, Clerk of the Justice Court, or Justice of the Peace
authorized to issue warrants, of the town of*

" SECT. 2.  No negative allegations of any kind need be averred
or proved in any complaint under said chapter 508, or under sec-
tion 5 of this act ; and evidence of the sale or keeping for sale of
any of the liquors enumerated in sections 18 and 19 of said chap-
ter 508 shall be *primâ facie* evidence that the said sale or keeping
for sale is unlawful ; but the respondent in any such complaint
may show any license or authority to sell, or any other fact that
would render a sale or keeping for sale lawful, by way of defence.
" SECT. 3.  All of the liquors mentioned and enumerated in said
sections 18 and 19 of said chapter 508 shall be considered intox-
icating liquors within the meaning of this chapter.
" SECT. 4.  It shall not be necessary to prove an actual sale of
the liquors enumerated in sections 18 and 19 of said chapter 508
in any building, shop, saloon, place, or tenement in order to estab-
lish the fact that any of said liquors are there kept for sale ; but
the notorious character of any such premises, or the notoriously
bad or intemperate character of persons frequenting the same, or
the keeping of the implements or appurtenances usually appertain-
ing to grog-shops, tippling-shops, or places where such liquors are
sold, shall be *primâ facie* evidence that said liquors are kept on
such premises for the purposes of sale within this State."
*February* 5, 1881.  DURFEE, C. J.   The complaint is in the
form provided by Pub. Laws R. I. cap. 797, of March 18, 1880,
for prosecutions under Pub. Laws R. I. cap. 508, §§ 18 and 19,[1]

---

[1] As follows : " Sect. 18.  If any person shall, at any time, offer to sell, sell,
or suffer to be sold by any person, by sample or otherwise, any ale, wine, rum,

of June 25, 1875.  The complaint is for a violation of § 19.  One
objection to it is that § 19 no longer exists, having been repealed
by Pub. Laws R. I. cap. 653, § 2,[1] of February 20, 1878.  But
cap. 653, § 2, while it repeals § 19 as it originally existed, re-
enacts it in an amended form as § 19 of cap. 508.  It must there-
fore be taken as § 19 of cap. 508 in respect of offences subse-
quently committed.  Other objections relate to the form of the
complaint, which the defendant contends is fatally defective in
that it does not contain the usual negative averments.  Cap. 797,
§ 2, provides that "no negative allegations of any kind need
be averred or proved in any complaint under said chapter 508."
If this provision is valid, the objections to the form of the com-

---

or other strong or malt liquors, or any mixed liquors a part of which is ale,
wine, rum, or other strong or malt liquors, in violation of the preceding sec-
tions of this act or any of them, he shall be sentenced on the first conviction
to pay a fine of twenty dollars and all costs of prosecution and conviction, and
be imprisoned in the county jail for ten days; on the second conviction he shall
be sentenced to pay a fine of fifty dollars and all costs of prosecution and con-
viction, and be imprisoned in the county jail three calendar months; and on
the third and every subsequent conviction he shall be sentenced to pay a fine
of one hundred dollars and all costs of prosecution and conviction, and be im-
prisoned in the county jail not less than three months nor more than six calen-
dar months."

"Sect. 19. If any person shall keep or suffer to be kept on his premises or
possessions, or under his charge, for the purposes of sale, in violation of the
preceding sections of this act or any of them, any ale, wine, rum, or other
strong or malt liquors, or any mixed liquors a part of which is ale, wine, rum,
or other strong or malt liquors, he shall, on conviction, be fined twenty dollars,
or be imprisoned in the county jail thirty days."

[1] As follows: " CHAPTER 653.  An Act in amendment of Chapter 73 of the
General Statutes, and of Chapter 508 of the Public Laws.

"*It is enacted by the General Assembly as follows:*

"Sect. 2. Section 19, of chapter 508, of the Public Laws, is hereby amended
so as to read as follows:

"' Section 19. If any person shall keep or suffer to be kept on his premises or
possessions, or under his charge, for the purposes of sale, in violation of the
preceding sections of this act or any of them, any ale, wine, rum, or other strong
or malt liquors, or any mixed liquors a part of which is ale, wine, rum, or other
strong or malt liquors, he shall, on conviction, be fined twenty dollars, and be
imprisoned in the county jail ten days."

" Sect. 3. All acts and parts of acts inconsistent herewith are hereby repealed.

" Sect. 4. This act shall take effect from and after the passage thereof."

plaint fall to the ground.   The defendant contends that it is unconstitutional, being in violation of the rights of the accused " to be informed of the nature and cause of the accusation," and not to be " deprived of life, liberty, or property, unless by the judgment of his peers or the law of the land."   We do not think, however, that the provision is in derogation of either of these rights.   The Constitution does not secure to the accused any particular form of complaint or accusation, but only information which will enable him to defend and protect himself.   It does not exact the technicalities of criminal pleading, but only that degree of clearness and precision which is reasonably necessary to identify the offence which is the subject of the charge.   We think the complaint here meets this requirement.   No negative averments would be required by the rules of criminal pleading if the exceptions to the prohibition were not incorporated by reference in the prohibitory clause.   But for the reference the burden would fall on the accused, if he were within an exception, to show it by way of defence.   So too the burden would be cast upon him if the reference were stricken out by amendment, and certainly if the legislature can throw this burden on the accused by such an amendment, it cannot be unconstitutional for it to accomplish the same result by direct and original enactment.   The only effect of the enactment is to require that if any of the few persons who are privileged to sell intoxicating liquors are prosecuted for selling or keeping for sale, they shall show that they are privileged in defence, instead of requiring the prosecution to show in every case that the accused is not privileged.   We can but think that the requirement is as constitutional as it is reasonable.

The defendant contends that even if the negative averments were unnecessary, yet, inasmuch as the complaint alleges that the keeping was without lawful authority, it was incumbent on the prosecution to prove it.   We do not think so.   The statute only makes it necessary for the prosecution to prove a keeping for sale, which is presumably unlawful, unless the defendant shows that he is licensed or privileged.   *Commonwealth* v. *Tuttle*, 12 Cush. 502 ; *Commonwealth* v. *Carpenter*, 100 Mass. 204.

The other exception raises the question whether § 4 of cap. 797 is constitutional.   The language of § 4 is as follows, to wit :

" It shall not be necessary to prove an actual sale of the liquors

enumerated in sections 18 and 19 of said chapter 508 in any building, shop, saloon, place, or tenement, in order to establish the fact that any of said liquors are there kept for sale ; but the notorious character of any such premises, or the notoriously bad or intemperate character of persons frequenting the same, or the keeping of the implements or appurtenances usually appertaining to grog-shops, tippling-shops, or places where such liquors are sold, shall be *primâ facie* evidence that said liquors are kept on such premises for the purposes of sale within this State."

The State submitted, in support of the complaint, besides other evidence, evidence to show that the place kept by the defendant had the reputation of being a grog-shop, that it was frequented by men of intemperate habits, and that the implements and appurtenances were there which are usually to be found in a grog-shop. The defendant offered no testimony, but requested the court in effect to instruct the jury that they could not find him guilty unless they were convinced of his guilt beyond a reasonable doubt, and that testimony of the kind above recited would not of itself be sufficient to warrant a conviction. The court did not comply with these requests, but instructed the jury as follows, to wit: "*Primâ facie* evidence is that which appears to be sufficient proof respecting the matter in question until something appears to controvert it; but which may be contradicted, rebutted, or explained. *Primâ facie* evidence is sufficient to establish the fact unless rebutted; hence if the character of the place as one notorious for the sale of liquors, or if the fact that the usual implements and appurtenances were kept there, are proved to your satisfaction, that is sufficient to convict, if not rebutted." The defendant excepted both to the charge and to the refusals to charge.

It will be observed that the statute makes proof of the facts mentioned in it not only evidence against the accused, but *primâ facie* evidence of his guilt, so that upon proof of them it is not only the right but the duty of the jury to convict, unless the presumption is rebutted by other evidence, though of course such other evidence may be elicited from the witnesses for the State as well as given by witnesses for the defendant. *Commonwealth* v. *Pillsbury*, 12 Gray, 127. The question then is, whether a statute is constitutional which makes it the duty of a jury, em-

panelled to try a complaint for unlawfully keeping liquors for sale, to convict the accused upon simple proof that his place of business is notorious as a place where liquors are unlawfully kept for sale, or upon simple proof that the place is frequented by persons of notoriously bad or intemperate character, or upon proof that he has there the implements and appurtenances of a grog-shop or tippling-shop, without more, unless there be other evidence to rebut or control it.

We have very carefully considered the question, and have come to the conclusion that the statute is not constitutional. It virtually strips the accused of the protection of the common law maxim, that every person is to be presumed innocent until he is proved guilty, which is recognized in the Constitution as a fundamental principle of jurisprudence. And we think it is repugnant to the constitutional provision that the accused shall not " be deprived of life, liberty, or property, unless by the judgment of his peers or the law of the land." What is meant by " the judgment of his peers " is the judgment of a jury, and certainly the accused does not have the *judgment* of a jury, if the jury is compelled by an artificial rule to convict him, whether they think him guilty or not, upon proof of a fact which is consistent with his innocence, and which is so consistent with his innocence that proof of it at common law would not even be admissible against him. Suppose that the General Assembly were to enact that if any person were generally reputed to be guilty of a murder it should be *primâ facie* evidence that he was guilty, and that some citizen were convicted and sentenced to death or imprisonment on such evidence, because in the absence of rebutting evidence the jury had no option to acquit him. Could it be said that his life or liberty had been taken from him by the *judgment* of his peers ? We think not. The judgment of the jury would not have been taken on the question of his guilt, but only on the question whether or not he was generally reputed guilty. So under the statute here a man may be convicted of unlawfully keeping intoxicating liquors for sale, upon proof that his place of business is generally reputed to be a liquor shop, without the jury's actually passing any judgment on the question of his guilt.

The provision is that the accused shall not be deprived of his life, liberty, or property, " unless by the judgment of his peers *or*

the law of the land." It may be argued that even if the accused
does not have the judgment of his peers he is nevertheless con-
victed by " the law of the land." This phrase has a historical
origin. It was borrowed from *Magna Charta*, and, as has been
repeatedly decided, means the same as " due process of law."
The question then is, whether if a man is convicted on the testi-
mony indicated, and under the rule prescribed by the statute, he
is convicted according to " due process of law."

The answer to the question depends on the meaning of the
phrases " due process of law " and " the law of the land." The
phrases have never received a perfectly satisfactory definition.
One or the other of them occurs in all or nearly all the consti-
tutions of the several States and in the Constitution of the United
States, and it is well settled that the provisions in which they
occur were intended to operate as limitations on the legislative
power of the several States and of the United States. It fol-
lows, if the provision is a limitation on the legislative power,
that a legislative enactment is not necessarily " the law of the
land," even when it does not conflict with any other provision
of the Constitution, and that a proceeding according to a legis-
lative enactment is not necessarily " due process of law." It is
also settled that these provisions secure to every citizen, except in
the matter of taxation, a judicial trial before he can be deprived
of life, liberty, or property. The definition of " due process of
law," given by Judge Edwards in *Westervelt* v. *Gregg*, 12 N. Y.
202, 209, is quoted by Judge Cooley in his work on Constitu-
tional Limitations, *355, with approval, and is in our opinion not
only concise but very accurate. " Due process of law undoubt-
edly means," he says, " in the due course of legal proceedings
according to those rules and forms which have been established
for the protection of private rights." The effect in criminal pros-
ecutions is to secure to the accused, before condemnation, a judi-
cial trial, if not strictly in all points according to the common
law, at least not in violation of those fundamental rules and prin-
ciples which have been established at common law for the pro-
tection of the subject or the citizen. Among these rules there is
none which is more fundamental than the rule that every person
shall be presumed innocent until he is proved guilty. " This
rule," said Judge Selden, in *The People* v. *Toynbee*, 2 Park. Cr.

490, 526, " will be found specifically incorporated into many of our state constitutions, and is one of those rules which in our Constitution are compressed into the brief but significant phrase, ' due process of law.' " Indeed to hold that a legislature can create artificial presumptions of guilt from facts which are not only consistent with innocence, but which are not even a constituent part of the crime when committed, is to hold that it has the power to take away from a judicial trial, or at least substantially reduce in it, the very element which makes it judicial. To hold so is to hold that the legislature has power to bind and circumscribe the judgments of courts and juries in matters of fact, and in an important measure to predetermine their decisions and verdicts for them. It is true the accused has the right of defence left to him, and may, if he can adduce satisfactory evidence, rebut the statutory presumptions; but the production of such evidence is not always easy, even with the right to testify in his own behalf; and the right to testify in his own behalf having been granted, can be abrogated, by the legislature. It is not one of those great and immemorial rights which lie embedded in the phrase " the law of the land." See Cooley Constit. Limit. *351–*357; *Clark* v. *Mitchell*, 64 Mo. 564; *Parsons* v. *Russell*, 11 Mich. 113, 121; *Hoke* v. *Henderson*, 4 Dev. 1; *Taylor* v. *Porter*, 4 Hill N. Y. 140; *Embury* v. *Conner*, 3 N. Y. 511, 517; *Wynehamer* v. *The People*, 13 N. Y. 378; *The People* v. *Toynbee*, 20 Barb. S. C. 168; also on appeal, 2 Park. Cr. 490, and see particularly the remarks of Selden, J., 524–527.

· Our attention has been called to *Commonwealth* v. *Williams*, 6 Gray 1, and *State* v. *Hurley*, 54 Me. 562, in which it was decided that statutes providing that in prosecutions for selling spirituous and intoxicating liquors, delivery in or from any building or place other than a dwelling-house, " shall be deemed *primâ facie* evidence of a sale," were constitutional. It cannot be denied that those cases are weighty precedents ·for the prosecution. But in the first of them Judge Thomas dissented from his associates in an able opinion, and both of them differ from the case at bar in this, that the fact which the statutes make *primâ facie* evidence of a sale, to wit, delivery, is a necessary constituent of a sale, whereas the facts which are made *primâ facie* evidence by our statute may not only exist without the offence,

but the offence may exist without the facts. They do not necessarily enter into its commission. If this difference is not enough to distinguish the case at bar from the cases cited, we can only say that we must rather adhere to our own judgment, which seems to accord with that which was entertained by the higher courts of New York, than defer to the judgment of the courts which decided those cases, however highly we respect it.

In the testimony submitted was this, to wit: a witness asked the defendant what he sold, and the defendant replied "beer." The court instructed the jury that beer is a well known malt liquor, and that if the defendant sold under that name something which was not a malt liquor, it ought to appear in the testimony, or otherwise the jury should presume it was a malt liquor. We think this was error. We do not think there is any presumption of law, that when a man speaks of beer he means a malt liquor, but we think that what he means is purely a question of fact for the jury. It is matter of common knowledge that there are beverages containing neither malt nor any other intoxicating ingredient which are called beers.

The exceptions relating to the form and sufficiency of the complaint, and to the absence of testimony showing want of lawful authority, are therefore overruled. The other exceptions relating to the charge of the court are sustained, and the cause is remanded to the Court of Common Pleas for a new trial.

*Samuel P. Colt*, Assistant Attorney General, for plaintiff.
*Charles E. Gorman & Hugh J. Carroll*, for defendant.

NOTE BY THE CHIEF JUSTICE. — In the Declaration of Rights adopted by the Continental Congress in 1774, it is declared that the inhabitants of the Colonies are entitled " by immutable laws of Nature, the principles of the English Constitution, and the several charters and compacts," to certain rights enumerated, the fifth of which is the following, to wit: " That the respective Colonies are entitled to the common law of England, and more especially to the great and inestimable privilege of being tried by their peers of the vicinity according to the course of that law." This probably shows how the provision in question was understood by the great lawyers of the Revolution. See Pitkin's United States, Vol. I. pp. 285, 286.