James STONE *v.* STATE of Arkansas

CR 73-54                                    498 S.W. 2d 634

Opinion delivered July 23, 1973

[Rehearing denied September 10, 1973.]

*Harold L. Hall,* Public Defender, for appellant.

*Jim Guy Tucker,* Atty. Gen., by: *O. H. Hargraves,* Deputy Atty. Gen., for appellee.

JOHN A. FOGLEMAN, Justice. The record in this case is stipulated. Appellant states (and the state agrees) that the sole issue on this appeal is the constitutionality of Section 1 of Act 68 of 1972. Upon a search of the person of appellant incidental to his arrest, 1200 milligrams of heroin were seized. The sole point relied upon for reversal by appellant was stated thus:

> Section 1 of Act 68 of 1972 is unconstitutional in that it denied the defendant due process by permitting the jury to make a presumption upon a fact not in evidence and that it violated his Fifth Amendment privilege against self-incrimination.

Appellant asks that his conviction be reversed and dismissed on the ground that he was convicted under an act that is unconstitutional under the Constitution of the United States.

The section of the statute in question reads:

> Possession by any person of a quantity of Heroin in excess of 100 milligrams shall create a rebuttable

presumption that such person possesses such Heroin with intent to deliver, provided however, the presumption provided for herein may be overcome by the submission of evidence sufficient to create a reasonable doubt that the person charged possessed Heroin with intent to deliver in violation of the law.

Appellant admits that a statutory inference may be valid if there is a valid connection between the fact proved and the ultimate fact to be established. Appellant's principal reliance is placed upon *Leary* v. *United States*, 395 U.S. 6, 89 S. Ct. 1532, 23 L. Ed. 2d 57 (1969).

In approaching every question pertaining to the constitutionality of an act of the legislative branch, the judiciary must always keep certain basic principles in mind, all of which are essential to the welfare of the checks and balances provided by the American tripartite system of government. The first of these is that the legislature's power is limited only by the state and federal constitutions. *Rockefeller* v. *Hogue*, 244 Ark. 1029, 429 S.W. 2d 85; *Berry* v. *Gordon*, 237 Ark. 547, 376 S.W. 2d 279; *McArthur* v. *Smallwood*, 225 Ark. 328, 281 S.W. 2d 428; *Gipson* v. *Ingram*, 215 Ark. 812, 223 S.W. 2d 595. The next is that a presumption of constitutionality attends every such act. *Redding* v. *State*, 254 Ark. 317, 493 S.W. 2d 116; *Bush* v. *Martineau*, 174 Ark. 214, 295 S.W. 9. All doubt must be resolved in favor of constitutionality. *Redding* v. *State*, supra; *Bush* v. *Martineau*, supra. Another principle is that if it is possible for the courts to so construe an act that it will meet the test of constitutionality, they not only may, but should and will, do so. *Davis* v. *Schimmel*, 252 Ark. 1201, 482 S.W. 2d 785; *McLeod* v. *Santa Fe Transportation Co.*, 205 Ark. 225, 168 S.W. 2d 413. Another way of stating this elementary rule is that every reasonable construction must be resorted to in order to save the statute from unconstitutionality. *Bush* v. *Martineau*, supra. See also *Redding* v. *State*, supra.

The act can be construed so it does not run afoul of constitutional inhibitions. At the outset it should be noted that, unlike most of such statutes which have fallen on the test of constitutionality by the theory upon

which appellant's argument is based, our statute does not base the statutory presumption (or more properly inference, as will be presently shown) upon *mere* possession of the heroin. The quantity possessed is the criterion.

A presumption of law is not involved, and we are, definitely, not dealing with a conclusive presumption. The words "rebuttable presumption" are of sufficient flexibility to permit a construction which will effectuate the legislative intention, and we should so construe this act. See *Redding* v. *State,* supra. Dean Ralph C. Barnhart has treated the flexibility of the word "presumption" in his article "Use of Presumptions in Arkansas," 4 Ark. L. Rev. 128 (1950), saying:

> The term "presumption" is accurately used only to describe any of the instances where the courts will assume the existence of a presumed fact when the basic fact is established—in short, to describe the compelled inference situation. Sometimes the courts use the term "presumption" when they mean something else. Frequently it is used to describe a mere logical reference, that is, an inference which arises from the probative force of the evidence, and which the trier is justified in drawing from the facts proved. Such an assumption is aptly described as a *justifiable* inference, since the trier may draw the inference if it thinks that the evidence requires it, or it may refuse to do so if it does not. This being so, such an inference does not impose any of the procedural consequences of a presumption upon the opposite party.

> \* \* \*

> The term "presumption" may be used merely to state that the proponent of an issue has made out a prima facie case, using prima facie in the sense of sufficient evidence to take the case to the jury, thus avoiding a directed verdict against him. At the point the proponent rests, his prima facie case is equally effective to avoid a directed verdict, whether founded upon a presumption or upon evidence without the aid of a presumption. With respect to the opponent, the situation is quite different. Unless he brings in

evidence to rebut the presumption, the court will tell the jury to find that the presumed fact exists. If he introduces sufficient evidence to rebut the presumption, the proponent's prima facie case is gone.

\* \* \*

Presumptions may serve a number of purposes in trials of law suits, but the chief purposes usually suggested are (1) to serve some procedural function, such as allocating the burden of proof or of permitting recovery upon an assumption of a fact of which strict proof is impossible; (2) to promote some desirable social or legislative policy or result; and (3) to embody in a uniform rule of law what seems to be the common experience of mankind in identical situations.

Only recently Mr. Justice Powell pointed out in a footnote to the majority opinion in *Barnes* v. *United States,* — U.S. —, 93 S. Ct. 2357, 37 L. Ed. 2d 380 (1973), that statutes creating criminal law inferences may be interpreted to preserve the trial court's traditional discretion in determining whether there is sufficient evidence to go to the jury and in charging the jury, and cited *Turner* v. *United States,* 396 U.S. 398, 90 S. Ct. 642, 24 L. Ed. 2d 610 (1970) and *United States* v. *Gainey,* 380 U.S. 63, 85 S. Ct. 754, 13 L. Ed. 2d 658 (1965), as holding the court's discretion to be inherent in the use of common law inferences.

In its excellent brief, the state points out that the words "rebuttable presumption" are often taken to mean an inference which obtains until overthrown by proof.[1] See, e.g., *Beck* v. *K. C. Public Service,* 48 S.W. 2d 213 (Mo. App. 1932). See also Dean Barnhart's article, supra. The state appropriately concedes that the constitutionality of a statutorily created presumption rests in the rational connection between the proven fact and the presumed fact. We cannot say that the connection here is not rational.

---

[1]We ourselves have called a similar statutorily declared presumption to be a "rebuttable presumption" when it can be overcome by proof. *Cactus Distributing Co.* v. *State,* 249 Ark. 113, 458 S.W. 2d 149. See Ark. Stat. Ann. § 48-922 (Repl. 1964).

Clearly, the words of the statute made the "presumption" the kind productive of a prima facie case by providing that the "presumption" may be overcome by submission of evidence to create a reasonable doubt that the person charged possessed a controlled substance with intent to deliver in violation of Act 590 of 1971.

Passing now to the rationality of the inference that possession of 100 milligrams, or more, of heroin creates such a "rebuttable presumption," we find absolutely nothing in this record to indicate that there is no such connection between the possession of such a quantity of heroin and the intent of the possessor to deliver it. Neither this court nor the trial court was asked to take judicial notice of the amounts or quantities which a person might possess for other uses and purposes. It is at least a matter of extreme doubt that this is a matter of which the courts could be asked to take judicial notice. At any rate, in the absence of evidence contradictory of the legislative declaration, or showing it not to be upon a rational basis, we cannot strike down the fact-finding stated in this act. To do so would usurp a legislative function.

Fact-finding in the judicial department is based upon evidence presented in an adversary proceeding. Legislative fact-finding is based upon an independent, investigatory process, which may be conducted by that branch of government in various ways. Our General Assembly has devoted much time in recent years to the study of the grave problems of our society arising out of the use and distribution of various types of drugs.[2] That body has found that possession of various drugs in excess of the quantities enumerated in Section 1, Act 68 of 1972, bears a reasonable relationship with an intent to deliver them. We should not overthrow the finding or hold it to be irrational unless we are furnished with better and more persuasive information than is in the record before us or is of such common knowledge that no evidence should be required. We do not know just what fact-finding processes were utilized by the General Assembly before enacting Act 68 of 1972. Our lack of information on this score does not license this court to say that the legislature

---

[2]See Act 258 of 1937, Act 344 of 1937, Act 324 of 1941, Act 155 of 1941, Act 250 of 1959, Act 590 of 1971.

acted arbitrarily. We cannot overturn the legislative fact-finding unless its action can be said to be arbitrary. *Stanley* v. *Gates,* 179 Ark. 886, 19 S.W. 2d 1000; *Gentry* v. *Harrison,* 194 Ark. 916, 110 S.W. 2d 497; *Jumper* v. *McCollum,* 179 Ark. 837, 18 S.W. 2d 359; *Chicago Title and Trust Company* v. *Hagler Special School District,* 178 Ark. 443, 12 S.W. 2d 881. Expressions of this rule are well put in at least two of our decisions. In *Greene County* v. *Clay County,* 135 Ark. 301, 205 S.W. 709, we said:

> * * * where a power is committed to the Legislature to exercise under a given state of facts it is necessarily implied that the Legislature must first ascertain the existence of those facts, and that its determination is conclusive upon the courts. Any other rule would lead to the utmost confusion in the efforts of the courts to review legislative action upon the ascertainment of the existence of facts which may or may not appear to be conclusive. The only sound rule is, we think, to say that when there is a question of fact to be ascertained outside of those things which both courts and lawmakers must take cognizance of, the courts cannot inquire into those facts, for the purpose of overturning legislative action.

In *Hill* v. *Echols,* 140 Ark. 474, 215 S.W. 882, we added:

> It is the duty of the courts to respect legislative ascertainment of facts upon which laws are based, unless such determination is obviously erroneous, and there may be facts and existing circumstances which we are not at liberty to inquire into for the purpose of reviewing the decision of the lawmakers.

Even in *Leary* v. *United States,* 395 U.S. 6, 23 L. Ed. 57, 89 S. Ct. 1532 (1969), cited by appellant, the United States Supreme Court repeated its recognition in *United States* v. *Gainey,* 380 U.S. 63, 85 S. Ct. 754, 13 L. Ed. 2d 658 (1965), that, in matters not within specialized judicial competence or completely commonplace, significant weight should be accorded legislative capacity to amass the stuff of actual experience and cull conclusions from it. There was, and is, no burden on the state to

make a showing of the constitutionality of this provision. Appellant did bear such a burden, but has not met it.

We can readily agree with the United States Supreme Court that the declaration that every bank insolvency is presumed to result from fraud is mere legislative fiat, i.e., an arbitrary order or decree, because it should have been common knowledge that many bank insolvencies resulted, not from fraud, but from unpredictable economic conditions, and that, even when bank failures resulted from fraud, all directors were seldom involved. See *Manley* v. *Georgia,* 279 U.S. 1, 49 S. Ct. 215, 73 L. Ed. 575 (1929). We further agree with that court's holding that there is no rational basis to support a presumption that a firearm or ammunition possessed by a convicted felon or a fugitive from justice has been shipped, transported or received in interstate commerce. See *Tot* v. *United States,* 319 U.S. 463, 63 S. Ct. 1241, 87 L. Ed. 1519 (1943). The basis for a rational connection between the fact proved and that to be presumed was obviously rather strained.[3] We can also accept the idea expressed in *United States* v. *Romano,* 382 U.S. 136, 86 S. Ct. 279, 15 L. Ed. 2d 210 (1965), that the declaration that mere presence at an illicit liquor still has a rational connection with its possession and control is somewhat arbitrary. But quite a different result would have been reached by that court had the presence been made prima facie evidence of operational activities. We can accept the idea that it is arbitrary to say that marihuana being transported in this country was possessed with knowledge that it was illegally imported. In *Leary* v. *United States,* supra, however, the court, after reviewing the legislative record on the subject, held that statute invalid because there was no rational basis upon which to base any inference that marihuana possessors could, did, or should "know" that their marihuana was illegally imported. Indications from that record were that it would have been virtually impossible for legislative fact finders to arrive at the conclusion that most of the marihuana transported in this country was possessed with knowledge that it was illegally imported.

---

[3]It should be noted that in *Tot* the pertinent statute provided for a conclusive, not rebuttable, "presumption."

We cannot accept the Indiana Supreme Court's rationalization in cases such as *Powers* v. *State,* 204 Ind. 472, 184 N.E. 549 (1933) and *Walter* v. *State,* 208 Ind. 231, 195 N.E. 268, 98 A. L. R. 607 (1935), that before a proven fact can constitute prima facie evidence of a fact, the first fact must necessarily be sufficient, of itself, to sustain a conviction.

The general rule, apparently adopted by an overwhelming majority of jurisdictions, is succinctly stated at 16 C.J.S. 528, § 128, as follows:

> The legislature is also authorized to establish presumptions, and the effect to be given thereto, and it may declare what shall be prima facie evidence, in both civil and criminal proceedings, provided the facts to be proved fairly relate to, and have a natural connection with, the proposition to be inferred therefrom, and the statute furnishes some guide or test stating the facts necessary to constitute the prima facie case, leaving it to the court to decide whether such facts have been proved. The legislature may also regulate the burden of proof, and the extent thereof required. Indeed, it has been broadly stated that legislation may validly prescribe the weight to be given to evidence, but other decisions hold that the legislature does not possess the power to declare what weight the court shall give to certain evidence.

Examination of the footnotes to the above text indicates that Indiana may be virtually alone in its position. We have spoken on the subject ourselves in a manner indicative of our rejection of the extreme Indiana position. In *Linville* v. *State,* 129 Ark. 36, 195 S.W. 382, we found no constitutional inhibition against legislative relaxation of the common law rule of evidence requiring the state to prove the material allegations of a criminal charge beyond a reasonable doubt, even though we did not find any encroachment upon that rule. In that case, the statute provided that in abandonment and non-support cases, no evidence should be required to prove that the accused husband was married to the wife, or is the father of the children involved, other than would be necessary to prove these facts in a civil action and approved an instruction

that advised the jury that it was not necessary to find beyond a reasonable doubt that the man and woman were married but that these facts might be found upon a preponderance of the evidence. But more pertinently, we have sustained a statute providing that the acceptance of payments by a contractor on a contract without discharging a properly filed laborer's or materialman's lien within 10 days after receipt of payment or of notice of the lien was prima facie evidence of intent to defraud in a prosecution for the crime of failure to discharge mechanics' and materialmen's liens in violation of Ark. Stat. Ann. § 51-640 (Supp. 1965). [4] We said in *State* v. *Jacks*, 243 Ark. 77, 418 S.W. 2d 622:

> The general rule, well established in many jurisdictions, including the United States Supreme Court, is well stated in O'Neill v. United States, 19 F. 2d 322 (8 Cir., 1927):
>
> "The general principle is well recognized that even in criminal prosecutions, Congress or a state Legislature may with certain limitations enact that when certain facts have been proved they shall be prima facie evidence of the existence of the main fact in question. * * * The limitations are these: There must be some rational connection between the fact proved and the ultimate fact presumed;

[4]We have many such statutes, in addition to those to which reference has been made in this opinion, declaring similar presumptions. See, e.g.,

Ark. Stat. Ann. § 75-1031.1 (Repl. 1971)
  (as to blood content sufficient to show driver of motor vehicle under the influence of intoxicating liquor)
Ark. Stat. Ann. § 73-1001 (Repl. 1957)
  (construed to declare a presumption that a railroad is negligent upon proof of an injury caused by the running of a train)
Ark. Stat. Ann. § 73-231 (Supp. 1971)
  (making proof of existence of a weighing device on a building in which or from which buying or selling is commonly carried on presumptive evidence that the device is regularly used for commercial purposes by the person in charge of the building)
Ark. Stat. Ann. § 75-623 (Supp. 1971)
  (making collision with a pedestrian in a cross-walk or vehicle in intersection by driver who failed to stop at yield sign prima facie evidence of driver's failure to yield right-of-way)
Ark. Stat. Ann. § 41-3942 (Supp. 1971)
  (by which wilful concealment of unpurchased goods is basis of prima facie presumption of intention of concealer to convert goods to own use).

the inference of the existence of the ultimate fact from proof of the other fact must not be so unreasonable or unnatural as to be a purely arbitrary mandate; and the accused must not be deprived of a proper opportunity to present his defense to the main fact so presumed and have the case submitted upon all the evidence to the jury for its decision."

The case at bar clearly cannot be classified as a peonage statute. It is more comparable to our law making it an offense to execute an overdraft which likewise contains the presumption clause. Ark. Stat. Ann. §§ 67-720—24 (Repl. 1966). This court said in Edens v. State, 235 Ark. 284, 357 S.W. 2d 641 (1962) that the only effect of the presumption clause in § 67-722 is to place the burden on the defendant to go forward with the case. The burden of proof is not shifted.

Further protection is afforded Jacks by the holding in Reno and Stark v. State, 241 Ark. 127, 406 S.W. 2d 372 (1966), where we held that it is improper for the trial court to advise the jury of the presumption provision. *Reno and Stark* involved the charge of failure to discharge materialmen's liens.

We hold that the presumption clause has a rational connection with the balance of our statutes governing mechanics' and materialmen's liens. It is not arbitrary. The accused is not deprived of opportunity to present his defense on the main fact. The presumption of innocence remains with the accused and the burden of proof on the whole case is on the State. The accused is merely required to go forward with his proof when the lien is established, payment is proven, and the failure to satisfy the lien is shown.

We cannot agree with the implied equation of the statutory declaration with comments upon the failure of an accused to testify, or the argument that the statute requires an accused to prove his innocence, and violates his privilege against self-incrimination. As pointed out in *Turner* v. *United States,* 396 U.S. 398, 90 S. Ct. 642, 24 L. Ed. 2d 610 (1970), the appropriate evidentiary rebuttal might come through the testimony of others than the ac-

cused himself. It should be noted that the statutory presumption in that case that Turner purchased, sold, dispensed, or distributed a narcotic drug (cocaine) not in or from the original package, if found in possession of the drug without the appropriate tax stamps, was overturned upon the basis that bare possession was obviously an insufficient predicate for a conclusion that Turner was either dispensing or distributing and that there was a reasonable possibility that Turner did not purchase the cocaine, but either stole it or purchased it from a thief in a stamped package.

The United States Supreme Court has again, on June 18, 1973, flatly rejected, upon the authority of *United States* v. *Gainey,* 380 U.S. 63, 85 S. Ct. 754, 13 L. Ed. 2d 658 (1965), the argument that a properly worded instruction on a permissive inference constitutes a comment on the defendant's failure to testify. *Barnes* v. *United States,* — U.S. —, 93 S. Ct. 2357, 37 L. Ed. 2d 380 (1973).

Although, according to the stipulated record, the question of constitutionality arose upon appellant's objection to a jury instruction in the language of the statute, the only objection made went to the question of constitutionality of the statute. No mention or hint of the instruction's being a comment on the evidence appears anywhere in the record until appellant's reply brief was filed. There, appellant invokes Article 7, Section 23, of the Constitution of Arkansas by asserting that to adopt the state's conclusion that the act is constitutional would be contrary to that constitutional provision. A complete answer to that particular argument is that there is no language whatever in the statute that requires the court to instruct the jury as to the impact or effect of proof of possession of more than 100 milligrams of heroin. Consequently, the section of the act in question cannot possibly be unconstitutional because of conflict with that section of our state constitution.

The question whether the instruction quoting the statute, insofar as it related to possession of heroin, violates Article 7, Section 23, is not properly before this court, even if the recited argument, advanced for the first

time in appellant's reply brief, could be said to raise it. *Yellow Cab Co.* v. *Sanders,* 250 Ark. 418, 465 S.W. 2d 324; *Ryall* v. *Waterworks Improvement Dist. No. 3,* 247 Ark. 739, 447 S.W. 2d 341. It may well be that the instruction would fall upon the authority of *Lott* v. *State,* 223 Ark. 841, 268 S.W. 2d 891, in which it was held that telling the jury that an inference of guilt of larceny could be based upon an accused's possession of recently stolen property was prohibited as a comment on the evidence.[5] We reserve that question for another day when the state shall have had an opportunity to state and advocate its position thereon.

On the record presented, we hold that Section 1, Act 68 of 1972, is constitutional and affirm the judgment.

Mr. Justice Byrd dissents.

CONLEY BYRD, Justice, dissenting. Appellant James Stone was convicted of possessing heroin, a controlled substance, with intent to deliver contrary to Ark. Stat. Ann. § 82-2617 (Supp. 1971), as amended. For reversal he contends that the trial court erred in instructing the jury in accordance with Act 68 of 1972.

Section 1, Article IV, Act 590 of 1971 (Ark. Stat. Ann. § 82-2617), makes possession of a drug with intent to deliver a felony. Mere unlawful possession is only a misdemeanor. Act 68 of 1972 provides:

---

[5]The qualifying language of the statute may bring it within the purview of instructions such as that approved in *Selman* v. *State,* 159 Ark. 131, 251 S.W. 882. The instruction was not restricted to a statement that the possession of more than 100 milligrams tended to prove an intent to deliver, so that it would come within the coverage of *Walker* v. *State,* 138 Ark. 517, 212 S.W. 319. Nor was it couched in such language as we approved for advising the jury of the inference permissible from possession of recently stolen property in *Petty* v. *State,* 245 Ark. 808, 434 S.W. 2d 602. In *Barnes* v. *United States,* supra, the United States Supreme Court has held that an instruction submitting a permissive inference to a jury does not violate federal constitutional due process requirements so long as it only permits, but does not require, the jury to draw the inference, and to weigh the evidence consistent with innocence given in explanation on behalf of the defendant, and shifts only the burden of going forward to the defendant. See also, *United States* v. *Gainey,* supra.

"SECTION I. Section 1 of Article IV of Act 590 of 1971 is hereby amended by adding a new subsection at the end thereof to read as follows:

"(d) Rebuttable Presumption. Possession by any person of a quantity of any controlled substance listed in this subsection in excess of the quantity limit set out herein, shall create a rebuttable presumption that such person possesses such controlled substance with intent to deliver in violation of Section 1 (a) and (b) of this Article. Provided, however, the presumption provided for herein may be overcome by the submission of evidence to create a reasonable doubt that the person charged possessed a controlled substance with intent to deliver in violation of Section 1 (a) and (b) of this Article.

| | |
|---|---|
| Heroin | 100 milligrams |
| Opium | 3 grams |
| Morphine | 300 milligrams |
| Cocaine | 2 grams |
| Codeine | 600 milligrams |

. . ."

The stipulated facts upon which this record is before us shows that appellant had 1200 milligrams of heroin in his possession. The trial court instructed the jury as follows:

"Possession by any person of a quantity of Heroin in excess of 100 milligrams shall create a rebuttable presumption that such person possesses such Heroin with intent to deliver, provided, however, the presumption provided for herein may be overcome by the submission of evidence sufficient to create a reasonable doubt that the person charged possessed Heroin with intent to deliver in violation of law."

The brief writers have not favored us with any expertise as to the dosage of heroin for either medication purposes or addiction. In a book entitled *Narcotics and Narcotic Antagonists* by *Francis F. Folder,* M.D., *Mark Swerdlow,* M.D. and *Ephraim S. Siker,* M.D., it is pointed out at page 183 that heroin is two to four times as potent as morphine. At page 86 the authors state:

"After prolonged use very high doses of narcotics may be tolerated by addicts. The usual daily dose of morphine in long standing addiction is in the range of 2 to 3 gr., but in a verified case as much as 5 gm. were used daily and 2 gm. of morphine were injected intravenously in 0.25 gr. increments within two and one half hours to an addict without any appreciable deleterious effect. The degree of tolerance, however, is not limitless. Fatalities among narcotic addicts occur not infrequently from overestimation of the tolerated dose."

The same authors point out at page 138 that the normal dose of codeine in adults is 30 to 60 milligram. A common pill sold under the trade name of Empirin No. 3 contains 30 milligram of codeine.

Statutes such as that involved here which make one fact evidence of another fact have been before the courts on numerous occasions. Apparently most of the state courts, except Rhode Island, see *State* v. *Beswick,* 13 R. I. 211 (1880), at first, took a rather liberal view of such statutes. See *State* v. *Kelly,* 218 Minn. 247, 15 NW 2d 554, 162 A.L.R. 477 (1944). The Minnesota court criticizes these early decisions in this language:

"The pragmatic test focuses on the end in view rather than on the means applied. The rights of the individual are sacrificed because it is thought that the welfare of society demands it. In the many cases which have sustained statutory presumptions in connection with prosecution for violation of liquor laws, it is evident that the decisions are based upon the wholesome desire to enforce the liquor laws rather than on reason and experience. In their labored effort to sustain these statutes under any and all circumstances as a proper exercise of legislative control over evidence, many state courts have abjured all adherence to the Bill of Rights, as if it were a mere scrap of paper. . . ."

The early state court cases were not always unanimous. For instance in *Commonwealth* v. *Williams,* 6 Gray, Mass. 1, 9 (1856), construing a statute making the

delivery of spirituous liquor prima facie evidence of a sale, Mr. Justice Thomas, in a dissent, made the following criticism of the rebuttable presumption.

> ". . . Upon the proof of a fact, equally consistent with the innocence, as with the guilty of accused, it infers and presumes his guilt. Upon the proof of an act which the law nowhere forbids or censures, and which is, in and of itself, without meaning, it takes from the accused the presumption of innocence, and calls upon him for his defence; his defence not to the thing proved, but to the thing not proved, the thing the government has failed to prove, to wit, a sale."

After state courts had approved such legislative presumptions as to liquor violations, the state legislatures started enacting similar presumptions to other conduct. For instance Georgia enacted a banking law which provided:

> "Every insolvency of a bank shall be deemed fraudulent, and the president and directors shall be severally punished by imprisonment and labor in the penitentiary for not less than one (1) year nor more than ten (10) years; provided that the defendant in a case arising under this section, may repel the presumption of fraud by showing that the affairs of the bank have been fairly and legally administered, and generally, with the same care and diligence that agents receiving a commission for their services are required and bound by law to observe; and upon such showing the jury shall acquit the prisoner."

In *Manley* v. *State of Georgia*, 279 U.S. 1, 49 S. Ct. 215, 73 L. Ed. 575 (1929), this statute was held violative of the due process clause of the Fourteenth Amendment. In so doing the United States Supreme Court said: "Mere legislative fiat may not take the place of fact in the determination of issues involving life, liberty or property."

In *Tot* v. *United States*, 319 U.S. 463, 63 S. Ct. 1241, 87 L. Ed. 1519 (1943), the statute before the court provided:

> "It shall be unlawful for any person who has been convicted of a crime of violence or is a fugitive from

justice to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce, and the possession of a firearm or ammunition by any such person shall be presumptive evidence that such firearm or ammunition was shipped or transported or received, as the case may be, by such person in violation of this Act."

The court pointed out that there was no connection between the fact proved and the presumed fact in common experience, and in holding the act violative of the due process clause, said:

"The Government seems to argue that there are two alternative tests of the validity of a presumption created by statute. The first is that there be a rational connection between the facts proved and the fact presumed; the second that of comparative convenience of producing evidence of the ultimate fact. We are of the opinion that these are not independent tests but that the first is controlling and the second but a corollary. Under our decisions, a statutory presumption cannot be sustained if there be no rational connection between the fact proved and the ultimate fact presumed, if the inference of the one from proof of the other is arbitrary because of lack of connection between the two in common experience. This is not to say that a valid presumption may not be created upon a view of relation broader than that a jury might take in a specific case. But where the inference is so strained as not to have a reasonable relation to the circumstances of life as we know them, it is not competent for the legislature to create it as a rule governing the procedure of courts."

In *Griffin* v. *California*, 380 U.S. 609, 85 S. Ct. 1229, 14 L. Ed. 2d 106 (1965), there was before the court of California a law that permitted comment upon the failure of the accused to testify in his own behalf. The California trial court, pursuant to such law, had instructed the jury:

"As to any evidence or facts against him which the defendant can reasonably be expected to deny or explain because of facts within his knowledge, if he

does not testify or if, though he does testify, he fails to deny or explain such evidence, the jury may take that failure into consideration as tending to indicate the truth of such evidence and as indicating that among the inferences that may be reasonably drawn therefrom those unfavorable to the defendant are the more probable."

In holding this violative of the Fifth Amendment, the court said:

". . . The question remains whether, statute or not, the comment rule, approved by California, violates the Fifth Amendment.

"We think it does. It is in substance a rule of evidence that allows the State the privilege of tendering to the jury for its consideration the failure of the accused to testify. No formal offer of proof is made as in other situations; but the prosecutor's comment and the court's acquiescence are equivalent of an offer of evidence and its acceptance. . . ."

In *United States* v. *Romano*, 382 U.S. 136, 86 S. Ct. 279, 15 L. Ed. 2d 210 (1965), upon a charge of "possession, custody and control of an illicit still" in violation of 26 U. S. C. 5601 (a) (1), the trial court had in accordance with 26 U. S. C. 5601(b) (1), instructed the jury that the presence of the defendant at the site of an illegal still "shall be deemed sufficient evidence to authorize conviction, unless the defendant explains such presence to the satisfaction of the jury." In holding the statute void, the Court said:

"The test to be applied to the kind of statutory inference involved in this criminal case is not in dispute. In *Tot* v. *United States*, 319 U.S. 463, the Court, relying on a line of cases dating from 1910, reaffirmed the limits which the Fifth and Fourteenth Amendments place 'upon the power of Congress or that of a state legislature to make the proof of one fact or group of facts evidence of the existence of the ultimate fact on which guilt is predicated. . . .

". . . Presence tells us only that the defendant was there and very likely played a part in the illicit scheme.

But presence tells us nothing about what the defendant's specific function was and carries no legitimate, rational or reasonable inference that he was engaged in one of the specified functions connected with possession, rather than in one of the supply, delivery or operational activities having nothing to do with possession. Presence is relevant and admissible evidence in a trial on a possession charge; but absent some showing of the defendant's function at the still, its connection with possession is too tenuous to permit a reasonable inference of guilt—'the inference of the one from the proof of the other is arbitrary. . . .' "

In *Leary* v. *United States,* 395 U.S. 6, 89 S. Ct. 1532, 23 L. Ed. 2d 57 (1969), the charge was knowingly transporting marihuana which had been illegally imported. The statute also provided:

"Whenever on trial for a violation of this subsection, the defendant is shown to have or to have had the marihuana in his possession, such possession shall be deemed sufficient evidence to authorize conviction unless the defendant explains his possession to the satisfaction of the jury."

After consulting the authorities to the effect that some marihuana is grown in the United States, the court in holding the presumption invalid said:

"The upshot of *Tot, Gainey,* and *Romano* is, we think, that a criminal statutory presumption must be regarded as 'irrational' or 'arbitrary' and hence unconstitutional, unless it can at least be said with substantial assurance that the presumed fact is more likely than not to flow from the proved fact on which it is made to depend."

In a concurring opinion, Mr. Justice Black pointed out that the statutory presumption permitted Leary to be convicted without being confronted with the witnesses against him.

In *Turner* v. *United States,* 396 U.S. 398, 90 S. Ct. 642, 24 L. Ed. 2d 610 (1970), Turner was convicted on

two counts relating to heroin and two counts relating to cocaine. The first count on heroin charged that Turner violated 21 U.S.C. § 174 by receiving . . . and facilitating the transportation of heroin knowing that it had been unlawfully imported. The second count charged that Turner purchased, possessed and distributed heroin not in or from the original stamped package in violation of 26 U.S.C. § 4704(a). Identical charges were made with respect to the cocaine. At the trial the Government presented the evidence of the seizure of the drugs from Turner but presented no evidence of origin. On the § 174 counts the trial judge charged, in accordance with the statute, that the jury could infer from Turner's unexplained possession of the heroin and cocaine that he knew that it had been unlawfully imported. On the § 4704(a) counts, the trial judge read to the jury the statutory provision making posession of drugs not in a stamped package *prima facie* evidence that Turner purchased, sold, dispensed or distributed the drugs not in or from a stamped package. The Court again consulted the authorities from which it determined that cocaine was manufactured in this country but that heroin was neither produced nor manufactured in this country. Upon these facts the Court concluded that the possession of heroin was equivalent to the possession of "imported heroin." The § 174 conviction for knowingly receiving and transporting heroin that he knew was illegally imported was upheld. The Court after characterizing the § 4704(a) heroin charge as one "of *purchasing* in or from an unstamped package" also upheld that conviction. In so doing the Court was careful to make the following clarification:

> "Moreover, even if the evidence as to possession is viewed as not in itself proving that Turner was distributing heroin, his conviction must be affirmed. True, the statutory inference, which on this assumption would assume critical importance, could not be sustained insofar as it authorized an inference of dispensing or distributing (or of selling if that fact had been charged), for the bare fact of possessing heroin is far short of sufficient evidence from which to infer any of these acts. Cf. *Tot* v. *United States*, 319 U.S. 463, 63 S. Ct. 1241, 87 L. Ed. 1519 (1943); *United States* v. *Romano*, 382 U.S. 136, 86 S. Ct. 279, 15 L. Ed.

2d 210 (1965). But the inference of *purchasing* in or from an unstamped package is another matter."

The Court held the statutory presumptions invalid as to the cocaine charges. In discussing the presumption with respect to the § 4704(c) cocaine count, the Court said:

"Since Turner's possession of cocaine did not constitute an act of purchasing, dispensing, or distributing, the instruction on the statutory inference becomes critical. As in the case of heroin, bare possession of cocaine is an insufficient predicate for concluding that Turner was dispensing or distributing. As for the remaining possible violation, purchasing other than in or from the original stamped package, the presumption, valid as to heroin, is infirm as to cocaine.

"While one can be confident that cocaine illegally manufactured from smuggled coca leaves or illegally imported after manufacturing would not appear in a stamped package at any time, cocaine, unlike heroin, is legally manufactured in this country; and we have held that sufficient amounts of cocaine are stolen from legal channels to render invalid the inference authorized in § 174 that any Cocaine possessed in the United States is smuggled cocaine. . . . Similar reasoning undermines the § 4704(a) presumption that a defendant's possession of unstamped cocaine is prima facie evidence that the drug was purchased not in or from the original stamped container. The thief who steals cocaine very probably obtains it in or from a stamped package. There is a reasonable possibility that Turner either stole the cocaine himself or obtained it from a stamped package in possession of the actual thief. The possibility is sufficiently real that a conviction resting on the § 4704(a) presumption cannot be deemed a conviction based on sufficient evidence. . . ."

The State Courts, that have had an occasion to discuss the subject of statutory presumptions since the *Tot* case, *supra*, have arrived at the same conclusions reached by the United States Court. See *Sharp* v. *Commonwealth*,

213 Va. 269, 192 S.E. 2d 217 (1972), wherein the court held invalid a statute that permitted the jury to convict one in possession of marihuana with intent to distribute upon the sole evidence of possession. A strong and rather thorough discussion can be found in *State* v. *Kelly*, 218 Minn. 247, 15 N.W. 2d 554, 162 A.L.R. 477 (1944). Under the laws of Minnesota possession of intoxicating liquor was permitted and made lawful in both wet and dry counties. Another statute provided:

> "The finding of any such intoxicating liquors in the possession of any person, by means of search warrant shall be prima facie evidence that such person had possession of such liquors for the purpose of selling. . . without having obtained a license."

In holding this statute invalid the court among other things said:

> "It has been well stated that presumptions of law— at the best, uncertain instruments in the investigation and discovery of truth—are especially dangerous, in the administration of criminal justice, when used to control or impair the natural fundamental presumption of innocence; their effect being to give to evidence a technical probative force beyond that which it would naturally and ordinarily possess, in producing conviction in the minds of the jury. . . .

> ". . . [T]o hold that a legislature can create artificial presumptions of guilt from facts which are not only consistent with innocence, but which are not even a constitutent part of the crime when committed, is to hold that it has the power to take away from a judicial trial, or at least substantially reduce in it, the very element which makes it judicial. . . ."

The Indiana Supreme Court had before it presumptions dealing with the possession of an unregistered firearm in *Powers* v. *State*, 204 Ind. 472, 184 N.E. 549 (1933), and with embezzlement of bank deposits in *Walter* v. *State*, 208 Ind. 231, 195 N.E. 268, 98 A.L.R. 607 (1935), long before the *Tot* case, *supra*.

In *Powers* v. *State, supra,* the charge was murder and the plea was self defense. The prosecution proved that the defendant's weapon was an unregistered firearm and to sustain its admissibility relied upon the following statute:

> "In the trial of a person charged with committing or attempting to commit a felony against the person or property of another while armed with a pistol or revolver, without having a permit to carry such firearm as hereinbefore provided, the fact that such person was so armed shall be prima facie evidence of his intent to commit such felony."

The court pointed out that the shooting, if unlawful, could not be justified by a permit to carry a pistol, and, if the shooting was necessary to protect the appellant from death or great bodily harm, he was not required to forego protecting himself and suffer death or great bodily harm merely because he was carrying his pistol without a permit. In holding the statute invalid and the evidence inadmissible, the court said:

> "Enactments, such as the one under consideration, seek to establish a weight for certain evidence as affecting criminal intent. The authorities here cited . . . give no support to the theory that the legislature has any such power. We agree that an enactment which would make a fact *prima facie* evidence of crime which has no relation to a criminal act, and no tendency to establish a criminal act, would be unconstitutional. But we must go farther and hold that before a proven fact can constitute *prima facie* evidence of criminal intent, it must be sufficient of itself to sustain a conviction without support of statutory enactment. We cannot agree with the proposition that if the legislature gives a party a fair opportunity to establish his defense, and give evidence, the enactment is constitutional. Such a rule would require a defendant to prove himself innocent, notwithstanding the evidence against him, unsupported by legislative enactment, would not be sufficient to sustain a verdict of guilty."

The subsequent case of *Walter* v. *State, supra,* involved an Indiana statute defining the crime of embezzlement to include a bank officer who received a deposit when the bank was insolvent. The same statute also provided that the failure, suspension, or involuntary liquidation of the bank within thirty days after the time of receiving the deposit, which is charged to have been embezzled, shall be *prima facie* evidence of intent to defraud. In holding the *prima facie* presumption invalid the court said:

> "Section 19, of article 1 of the Constitution of Indiana provides: 'In all criminal cases whatever, the jury shall have the right to determine the law and the facts.' It has been repeatedly held, and is well settled, that it is error for the court in a criminal action to instruct the jury what evidence will be sufficient to establish any ultimate fact. Such an instruction is an invasion of the constitutional right of the jury to determine the facts for itself. The Legislature has no more right to invade the province of the jury than the court, and it cannot invest the court with power to invade the constitutional province of the jury. The giving of the instruction referred to was error."

The Constitution of the State of Arkansas, Art. 7, § 23 has a similar provision which provides: "Judges shall not charge juries with regard to matters of fact, but shall declare the law. . . ." While we have had no occasion to interpret this provision with respect to statutory presumptions, it has been applied to common law presumptions such as the possession of recently stolen goods. See *Mays* v. *State,* 163 Ark. 232, 259 S.W. 398 (1924), wherein the trial court upon a charge of receiving stolen property, instructed the jury, ". . . that the finding of stolen property in the possession of another, shortly after the said property had been stolen, raises a presumption of guilt as against the person in whose possession the same is found, but that this presumption is a rebuttable one, and that, if this possession is explained to the satisfaction of the jury, the presumption is overcome. . . ." We there held that such presumptions constituted an invasion of the province of the jury contrary to the aforesaid constitutional provision. Other courts have arrived at similar

conclusions upon presumptions from flight of the accused. See *Hickory* v. *United States,* 160 U.S. 408, 16 S. Ct. 327, 40 L. Ed. 474 (1896).

Thus it appears to me that the statutory presumption here is invalid under the due process clause, the Sixth Amendment right to confrontation of witnesses and the Fifth Amendment right to remain silent. Furthermore, under the interpretation given to the act by both the trial court and the State in the trial of this case, the act also violates Art. 7 § 23 of our Constitution which prohibits comments on the weight of the evidence. See *Reno and Stark* v. *State,* 241 Ark. 127, 406 S.W. 2d 372 (1966).

The anomaly of the majority's position can be demonstrated by the fact that hereafter all such cases will be tried before a jury—the jury may not know about the statute whereas defense counsel can be certain that in a trial before the judge the judge will certainly be aware of the inference.

For the reasons herein stated I respectfully dissent.